[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland v. Ohio Bur. of Workers' Comp.,* Slip Opinion No. 2020-Ohio-337.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-337

THE CITY OF CLEVELAND, APPELLEE *v.* OHIO BUREAU OF WORKERS' COMPENSATION, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland v. Ohio Bur. of Workers' Comp.,* Slip Opinion No. 2020-Ohio-337.]

*R.C. 2743.03(A)—Employer's claim against Bureau of Workers' Compensation is a legal claim, not an equitable claim, and thus, it should have been filed in the Court of Claims.*

(No. 2018-0572—Submitted September 10, 2019—Decided February 5, 2020.)

APPEAL from the Court of Appeals for Cuyahoga County,
No. 105604, 2018-Ohio-846.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we consider which court has jurisdiction over an employer's claim against the Ohio Bureau of Workers' Compensation ("BWC") for the reimbursement of alleged excessive premiums paid by the employer.

Specifically, appellee, the city of Cleveland, alleges that appellant, the BWC, charged the city inflated premiums for workers' compensation insurance in order to make up for discounts the BWC provided other employers. Cleveland raised this claim in a complaint it filed in the Cuyahoga County Court of Common Pleas. We hold that this is a legal claim, not an equitable one, and therefore the Court of Claims has exclusive jurisdiction over this case. Accordingly, we reverse the judgment of the Eighth District Court of Appeals, vacate all orders of the Cuyahoga County Court of Common Pleas in this case, and remand the cause to the common pleas court for an order of dismissal.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} Cleveland, as an employer, pays the BWC premiums for workers' compensation insurance. The BWC is then responsible for the distribution of workers' compensation benefits to city employees who suffer workplace injuries. In this case, Cleveland challenges the legality of premiums that the BWC charged over several years. According to Cleveland, the BWC undercharged the group-rated employers and then overcharged the individually rated employers, such as Cleveland, to make up the difference. The narrow issue before us is whether the case was properly filed in the court of common pleas or whether it should have been filed in the Court of Claims, which has exclusive jurisdiction over certain claims against state entities such as the BWC. R.C. 2743.03(A).

### A. The Ohio Workers' Compensation system

{¶ 3} Ohio requires public employers that are not self-insured employers to contribute to the public insurance fund "the amount of money determined by the administrator of workers' compensation." R.C. 4123.38. Employers can choose from a selection of plans. The BWC offers both individual- and group-rated plans.

{¶ 4} Pursuant to R.C. 4123.29(A), the administrator of the BWC, with the approval of the board of directors, classifies occupations or industries with respect to degree of hazard and risks and sets the premiums that employers must pay into

2

the state insurance fund for workers' compensation coverage each year. The BWC deposits these premiums into a single state insurance fund (it does not maintain a separate account for each employer), and it pays compensation benefits associated with work-related accidents from that fund. With the exception of a required surplus to maintain solvency, R.C. 4123.321 requires the BWC to establish a procedure for returning excess premiums to participating employers in order to maintain a revenue-neutral fund.

{¶ 5} Cleveland alleges that it was overcharged by the BWC for more than ten years because the BWC's method for determining premiums was flawed. In 1989, the General Assembly amended R.C. 4123.29 to require the BWC to develop and implement a plan that "groups, for rating purposes, employers, and pools the risk of the employers within the group." Am.Sub.H.B. No. 222, 143 Ohio Laws, Part II, 3197, 3315-3316. In response to this amendment, the BWC developed group-rated plans. Provided they met certain conditions, employers could elect to join a group-rated plan in which their collective risk was pooled in order to garner better premiums. The employers that chose not to participate in a group-rated plan or that did not meet the required conditions continued to be assessed premiums based upon their individual claim history and risks.

{¶ 6} The BWC acknowledges that during the years at issue, the discounted premiums it charged employers under the group-rated plan were insufficient to cover the losses attributable to those employers. Because the BWC must maintain a revenue-neutral fund, it had to find a way to recoup that difference. It did so by increasing the "off-balance factor," a factor used in calculating the employers' base rates. Cleveland alleges that this increase resulted in its unjustly being charged excessive premiums.

### B. Cleveland files suit

{¶ 7} In 2013, Cleveland sued the BWC in the Cuyahoga County Court of Common Pleas, asserting a claim of unjust enrichment on the ground that the

discounts provided to group-rated employers resulted in the individually rated employers, such as Cleveland, paying excessive premiums. Cleveland sought an order requiring the BWC to disgorge the amount of overpayment along with prejudgment and postjudgment interest. The BWC moved to dismiss the case, arguing that the common pleas court lacked subject-matter jurisdiction over the lawsuit because the city was seeking legal, rather than equitable, remedies, and thus, the Court of Claims had exclusive jurisdiction. The trial court denied the motion to dismiss and eventually granted summary judgment, in part, to Cleveland and ordered a bench trial on the amount of restitution owed to Cleveland due to its payment of inflated premiums.

{¶ 8} Following the bench trial, the trial court ordered the BWC to pay Cleveland $4,524,392 in restitution, along with postjudgment interest at the statutory rate. The Eighth District Court of Appeals affirmed the judgment on appeal.

{¶ 9} The BWC sought this court's discretionary review, raising three propositions of law. We accepted jurisdiction over all three, 153 Ohio St.3d 1432, 2018-Ohio-2639, 101 N.E.3d 464, but because we resolve this case on the first proposition of law, we need not address the other two. The first proposition of law states:

> A claim for overpayment of an amount owed to the State, under a statute that undisputedly requires some payment, and where the amount of alleged overpayment is derived from an estimated damages model rather than a known sum, is a legal claim that must be brought in the Court of Claims.

## II. ANALYSIS

{¶ 10} To determine whether the Court of Claims or the court of common pleas has jurisdiction over Cleveland's claim, we must decide whether the claim is legal or equitable. *Measles v. Indus. Comm.*, 128 Ohio St.3d 458, 2011-Ohio-1523, 946 N.E.2d 204, ¶ 7. Traditionally, the doctrine of sovereign immunity prevented claims against agents of the state, such as the BWC, for wrongs committed in the course of official duties. *Scot Lad Foods, Inc. v. Secy. of State*, 66 Ohio St.2d 1, 6, 418 N.E.2d 1368 (1981). However, sovereign immunity does not bar claims for equitable relief, only for legal relief. *Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.*, 62 Ohio St.3d 97, 105, 579 N.E.2d 695 (1991). In 1975, the General Assembly waived the state's sovereign immunity in most instances, R.C. 2743.02; Am.Sub.H.B. No. 800, 135 Ohio Laws, Part II, 869, 883, and simultaneously created the Court of Claims, which has "exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02," R.C. 2743.03(A)(1). Accordingly, the state is now subject to being sued for legal claims in the Court of Claims. However, because the doctrine of sovereign immunity never barred equitable claims, which have always been cognizable against the state, courts of common pleas continue to have original jurisdiction over them pursuant to Article I, Section 16, and Article IV, Section 4(B) of the Ohio Constitution and R.C. 2305.01.

{¶ 11} Restitution can be either legal or equitable relief, depending on the basis for the plaintiff's claim and the "nature of the underlying remedies sought." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212-213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). Historically, a *legal claim* for restitution was one in which the plaintiff " 'could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him.' " (Emphasis deleted.) *Great-West* at 213, quoting 1 Dobbs, *Law of Remedies*,

Section 4.2(1), at 571 (2d Ed.1993). An *equitable claim* for restitution was one in which "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.*

{¶ 12} The United States Supreme Court has recognized that most claims are legal: " 'Almost invariably * * * suits seeking * * * to compel the defendant to pay a sum of money to the plaintiff are suits for "money damages," as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.' " (First ellipsis sic.) *Id.* at 210, quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-919, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting). However, in a few cases, we have found suits for the recovery of funds to be claims in equity.

{¶ 13} In *Santos v. Ohio Bur. of Workers' Comp.*, injured employees sought to recover money that had been collected from them by the BWC pursuant to a subrogation statute that was subsequently determined to be unconstitutional. 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441. We determined that because the subrogation statute was unconstitutional, any collection or retention of moneys was unlawful and therefore the action seeking restitution was "an action to correct the unjust enrichment of the BWC [and sought] the return of specific funds wrongfully collected." *Id.* at ¶ 17. Thus, we concluded that the employees' claim was an equitable claim.

{¶ 14} In another case, we held that a claim by Medicaid providers seeking monetary relief from the Ohio Department of Human Services, following its implementation of an unlawful administrative rule that reduced reimbursement rates, was an equitable claim. *Ohio Hosp.*, 62 Ohio St.3d 97, 579 N.E.2d 695. In reaching this conclusion, we relied on the following analysis by the United States Supreme Court in *Bowen*:

> "Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.' D. Dobbs, *Handbook on the Law of Remedies* 135 (1973). * * *
>
> "* * * Maryland [the plaintiff] is seeking funds to which a statute allegedly entitles it, rather than money in compensation for the losses, whatever they may be."

(Emphasis deleted and ellipses and brackets added.) *Id.* at 895, quoting *Maryland Dept. of Human Resources v. Dept. of Health & Human Servs.*, 763 F.2d 1441, 1446 (D.C.Cir.1985).

{¶ 15} In the present case, even if the premiums charged by the BWC violated R.C. 4123.34(C)'s mandate that the BWC develop equitable rules for a rating system, as the trial court and the Eighth District determined, rendering its collection of a portion of the money unlawful, Cleveland's claim does not sound in equity.

{¶ 16} Since we decided *Santos* and *Ohio Hosp. Assn.*, the United States Supreme Court has provided clear guidance regarding what constitutes equitable relief, and that guidance further supports our determination that the claim here is a legal claim. In 2016, the court explained that a claim sounded in law if it sought to recover from a defendant's general assets rather than "specifically identified funds that remain in the defendant's possession." *Montanile v. Natl. Elevator Industry Health Benefit Plan Bd. of Trustees*, __ U.S. __, 136 S.Ct. 651, 658, 193 L.Ed.2d 556 (2016). The court further explained that "[e]quitable remedies 'are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing * * * rather than a right to recover a sum of money generally out of the defendant's assets.' 4 S. Symons, Pomeroy's Equity Jurisprudence § 1234, p. 694 (5th ed. 1941) (Pomeroy)." (Ellipsis sic.) *Montanile* at __, 136 S.Ct.

at 658-659. The court stated that if there is not a specifically identifiable fund, or traceable items on which the money from the fund was spent, to seize, "the plaintiff could not attach the defendant's general assets instead." *Id.* at 659. In such a case, "[t]he plaintiff had 'merely a personal claim against the wrongdoer'—a quintessential action at law." *Id.*, quoting Restatement of the Law, Restitution, Section 215(1), at 866 (1936).

{¶ 17} Although the BWC kept track of the amount of Cleveland's premium payments, R.C. 4123.34(A), Cleveland's premiums went into a general insurance fund, R.C. 4123.30, i.e., they were not kept separate from payments made by other public employers. Once Cleveland's premium payment was deposited into the fund, it became commingled with the premium payments from other employers. And even if we considered the state insurance fund itself to be a specific fund, Cleveland paid the last funds it seeks to recover in 2009. It is inconceivable how money belonging to Cleveland could "clearly be traced to particular funds or property" in the BWC's possession, *see Great-West*, 534 U.S. at 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (Historically, an equitable claim for restitution was one in which "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession"). The BWC has paid that money out as compensation to injured workers or refunds to covered employers. The money allegedly overpaid is no longer in the BWC's possession and cannot be recovered by a suit in equity. Thus, Cleveland's claim sounds in law and must proceed through the Court of Claims, which has exclusive jurisdiction over legal claims against the BWC.

### III. CONCLUSION

{¶ 18} For the foregoing reasons, we reverse the decision of the court of appeals, vacate all orders by the trial court in this matter, and remand the cause to the Cuyahoga County Common Pleas Court with instructions to dismiss the cause for lack of subject-matter jurisdiction.

Judgment reversed,

trial-court orders vacated,

and cause remanded.

KENNEDY, FRENCH, FISCHER, DEWINE, and STEWART, JJ., concur.

DONNELLY, J., dissents, with an opinion.

———————————

**DONNELLY, J., dissenting.**

{¶ 19} In *Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441, ¶ 17, this court determined that when the Bureau of Workers' Compensation ("BWC") unlawfully retains funds to which it is not entitled, "an action to correct the unjust enrichment of the BWC" is an equitable claim for restitution. *Santos* remains good law. *See Cirino v. Ohio Bur. of Workers' Comp.*, 153 Ohio St.3d 333, 2018-Ohio-2665, 106 N.E.3d 41, ¶ 28 (lead opinion citing *Santos* with approval). Yet the majority opinion today determines that an action seeking restitution of funds that the BWC unlawfully collected from the city of Cleveland is not an equitable action. In this case, the majority opinion brushes aside *Santos*, without overruling it, by linking its view of restitution to the view espoused by the United States Supreme Court. *See* Majority opinion at ¶ 16, relying on *Montanile v. Natl. Elevator Industry Health Benefit Plan Bd. of Trustees*, __U.S. __, 136 S.Ct. 651, 658, 193 L.Ed.2d 556 (2016). In doing so, it has essentially determined that a court can never order restitution of money.

{¶ 20} The majority opinion states, "It is inconceivable how money belonging to Cleveland could 'clearly be traced to particular funds or property' in the BWC's possession * * *." Majority opinion at ¶ 17, quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). I agree with the statement, but I disagree with the import the majority gives it. If a party can avoid a claim for restitution of money simply by commingling funds, then there will never be a successful claim for restitution of money. The

majority opinion doesn't state this position, but that is the logical extension of its statement. The problem is that in the modern age, most money is not a physical thing but is simply represented by numbers on a page, whether paper or electronic.

{¶ 21} There is no reason to adopt the untenable position that when money that was unlawfully received cannot be traced to particular funds, restitution is not available. Money is not like most assets—it is intrinsically fungible. When a person seeks the return of $100, he or she never insists that the $100 be the exact same bills possessed previously; any $100 will do just fine—for that matter, so will a check or an electronic transfer. Other assets are different, when a person seeks restitution of a ring, he or she is seeking a specific ring; rings have specific differentiating characteristics, both good and bad. Whereas one hundred dollars is one hundred dollars.

{¶ 22} The BWC has assets in excess of $28 billion. *See Fiscal Year 2018 Annual Report of the Ohio Bureau of Workers' Compensation*, *https://www.ic.ohio.gov/news/annualreport_pdfs/bwc_ic_annual_2018.pdf* (accessed Jan. 21, 2020) at page 3 [*https://perma.cc/2KKQ-DG82*]. It does not keep those funds in discernible stacks of bills and coins. That should not render it immune from a claim for restitution of money. The BWC was found to have overcharged Cleveland by $4,524,392, and it has ample funds available from which to make restitution.

{¶ 23} Cleveland is not seeking damages or any other legal remedy. Cleveland is not seeking one penny more than the $4,524,392 that it was unlawfully overcharged. Based on *Santos*, 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441, I conclude that Cleveland's claim is in equity. I would affirm the sound judgment of the court of appeals. Accordingly, I dissent.

———————————

Barbara A. Langhenry, Cleveland Director of Law, and Lisa A. Mack, Assistant Director of Law; and Calfee, Halter & Griswold, L.L.C., Maura L. Hughes, Mitchell G. Blair, and Alexander B. Reich, for appellee.

Dave Yost, Attorney General, Benjamin M. Flowers, Deputy Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, and Stephen P. Carney, Deputy Solicitor; and Taft, Stettinius & Hollister, L.L.P., James D. Abrams, and Michael J. Zbiegien Jr., for appellant.

Garry E. Hunter, urging affirmance for amicus curiae, the Ohio Municipal League.

_____