[Cite as *Mahle Behr Dayton, L.L.C. v. Ohio Bur. of Workers' Comp.*, 2021-Ohio-145.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| MAHLE BEHR DAYTON, LLC, et al. | : | |
| | : | Appellate Case No. 28772 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2018-CV-2230 |
| v. | : | |
| | : | (Civil Appeal from |
| OHIO BUREAU OF WORKERS' COMPENSATION | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of January, 2021.

. . . . . . . . . . .

JENNIFER L. MYERS, Atty. Reg. No. 0075401, 300 East Broad Street, Suite 350, Columbus, Ohio 43215; and RONALD A. FRESCO, Atty. Reg. No. 0059283, D. PATRICK KASSON, Atty. Reg. No. 0055570, and THOMAS N. SPYKER, Atty. Reg. No. 0098075, 200 Civic Center Drive, Suite 800, Columbus Ohio 43215
        Attorneys for Plaintiffs-Appellants

JAMES D. ABRAMS, Atty. Reg. No. 0075968, and DAVID J. BUTLER, Atty. Reg. No. 0068455, 65 East State Street, Suite 1000, Columbus, Ohio 43215; and JENNIFER D. BRUMBY, Atty. Reg. No. 0076440, 40 North Main Street, Suite 1700, Dayton, Ohio 45423
        Attorneys for Defendants-Appellees

. . . . . . . . . . . .

HALL, J.

{¶ 1} Mahle Behr Dayton, LLC and CPC Parts Delivery LLC appeal from a judgment of the Montgomery County Court of Common Pleas, which dismissed their claims for unjust enrichment and a violation of equal protection under the Ohio Constitution against the Ohio Bureau of Workers' Compensation (BWC) for lack of jurisdiction. The trial court concluded that the claims sound in law and that the Court of Claims has exclusive jurisdiction over legal claims against the BWC. We agree and affirm.

## I. Factual and Procedural Background

{¶ 2} In *City of Cleveland v. Ohio Bur. of Workers' Comp.*, 159 Ohio St.3d 459, 2020-Ohio-337, 152 N.E.3d 172, the Ohio Supreme Court explained aspects of the Ohio workers' compensation system that are also applicable to this case:

Ohio requires public employers that are not self-insured employers to contribute to the public insurance fund "the amount of money determined by the administrator of workers' compensation." R.C. 4123.38. Employers can choose from a selection of plans. The BWC offers both individual- and group-rated plans.

Pursuant to R.C. 4123.29(A), the administrator of the BWC, with the approval of the board of directors, classifies occupations or industries with respect to degree of hazard and risks and sets the premiums that employers must pay into the state insurance fund for workers' compensation coverage each year. The BWC deposits these premiums into a single state insurance fund (it does not maintain a separate account for each employer), and it pays compensation benefits associated with work-related accidents from

that fund. With the exception of a required surplus to maintain solvency, R.C. 4123.321 requires the BWC to establish a procedure for returning excess premiums to participating employers in order to maintain a revenue-neutral fund.

*Cleveland* at ¶ 3-4. The procedures for issuing rebates are found in the Ohio Administrative Code.

**{¶ 3}** In 2017, the BWC announced that there was a surplus for the policy year ending June 30, 2016, and that it would be issuing premium rebates to employers. Mahle Behr and CPC Parts paid premiums during that policy year under the same group-rated plan, and each company received a rebate. But they claim that their rebates should have been larger. Mahle Behr and CPC Parts allege that the BWC's method for determining the rebates for employers in their group-rated plan differed from its method for determining the rebates of employers in the individual-rated plans, resulting in lower rebate amounts for employers in the group-rated plan.

**{¶ 4}** In June 2018, Mahle Behr filed suit against the BWC in the Montgomery County Court of Common Pleas. Shortly after, CPC Parts moved to intervene in the case, which the trial court allowed. The companies' complaints asserted the same claims and asked for the same relief, based on the BWC's failure to apply the same method for determining their rebates as it applied to determine the rebates of employers in individual-rated plans. Each complaint asked for restitution based on claims of unjust enrichment and a violation of equal protection under the Ohio Constitution. The complaints alleged that the BWC had misinterpreted the Ohio Administrative Code and the Ohio Revised Code and also that that its interpretation was unconstitutional.

{¶ 5} On March 9, 2020, on the BWC's motion, the trial court dismissed the complaints for lack of subject-matter jurisdiction, concluding that under the Ohio Supreme Court's decision in *City of Cleveland v. Ohio Bureau of Workers' Compensation*, the companies' claims sound in law and therefore the Court of Claims has exclusive jurisdiction over them.

{¶ 6} Mahle Behr and CPC Parts appeal.

## II. Analysis

{¶ 7} The sole assignment of error alleges that the trial court erred by dismissing the case for lack of subject-matter jurisdiction.

{¶ 8} "The jurisdiction of the Court of Claims is defined by reference to the state's waiver of immunity in R.C. 2743.02." *Cirino v. Ohio Bur. of Workers' Comp.*, 153 Ohio St.3d 333, 2018-Ohio-2665, 106 N.E.3d 41, ¶ 19. The Court of Claims has "exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code." R.C. 2743.03(A)(1). The statutory waiver of immunity is broad: "The state hereby waives its immunity from liability * * * and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties * * *." R.C. 2743.02(A)(1).

{¶ 9} As a general matter, whether the Court of Claims or a court of common pleas has jurisdiction over a claim depends on "whether the claim is legal or equitable." *Cleveland*, 159 Ohio St.3d 459, 2020-Ohio-337, 152 N.E.3d 172, at ¶ 10. The Ohio Supreme Court explained in *Cleveland* that "the classification of a claim for restitution as either equitable or legal depends on the traceability of the funds the plaintiff seeks to

recover." *Pivonka v. Corcoran*, Ohio Slip Opinion No. 2020-Ohio-3476, __ N.E.3d __, ¶ 34, citing *Cleveland* at ¶ 11, 16.

{¶ 10} Mahle Behr's and CPC Parts' complaints each assert two claims. The first is unjust enrichment based on the BWC's alleged misinterpretation and unconstitutional application of Ohio statutes and administrative codes. The second claim asserts a violation of equal protection under the Ohio Constitution based on the BWC's interpretation of the law. The complaints ask for restitution from the BWC for the additional surplus premiums. In essence, the complaints allege that the BWC misinterpreted the Ohio Revised Code and the Ohio Administrative Code. According to Mahle Behr and CPC Parts, neither law requires or allows the BWC to use a different method to determine the rebates of employers in their group-rated plan, and to do so violates their constitutional right to equal protection under the law.

{¶ 11} The trial court dismissed Mahle Behr's and CPC Parts' complaints based on the Ohio Supreme Court's decision in *Cleveland.* In that case, the Court considered whether an employer's claim for unjust enrichment against the BWC for the reimbursement of alleged excessive premiums paid by the employer fell within the jurisdiction of the Court of Claims. The plaintiff-employer alleged that the BWC's method for determining its premiums was flawed and that the BWC had violated the Ohio Revised Code, rendering the excess premiums unlawful. The employer sought reimbursement of the alleged excessive premiums that it had paid. The Supreme Court concluded that the employer's claim "sounds in law and must proceed through the Court of Claims, which has exclusive jurisdiction over legal claims against the BWC." *Cleveland* at ¶ 17. It reasoned: "Although the BWC kept track of the amount of [the employer]'s premium

payments, R.C. 4123.34(A), [the employer]'s premiums went into a general insurance fund, R.C. 4123.30, i.e., they were not kept separate from payments made by other public employers. Once [the employer]'s premium payment was deposited into the fund, it became commingled with the premium payments from other employers." *Id.* at ¶ 17. The Court also noted that the employer had paid the last funds it sought to recover eleven years ago. "It is inconceivable," the Court said, "how money belonging to Cleveland could 'clearly be traced to particular funds or property' in the BWC's possession." *Id.* at ¶ 17, quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).

{¶ 12} Mahle Behr's and CPC Parts' unjust enrichment claims are essentially the same as the one raised in *Cleveland*. The companies allege that the BWC's method for determining their rebates was flawed and that the BWC incorrectly interpreted the Ohio Administrative Code and the Ohio Revised Code. They also seek the additional excess premiums to which they allege they are entitled under a proper interpretation of the law. Although Mahle Behr and CPC Parts seek reimbursement of excess premiums unlawfully withheld, rather than premiums unlawfully taken, this difference is immaterial for purposes of the legal-equitable claim analysis, because their claims, like the claim in *Cleveland*, seek recovery from the BWC's general insurance fund. The rebates paid out by the BWC were excess premiums that employers paid into the general fund during the policy year ending June 30, 2016, and the money for the rebates came from the general fund. So under *Cleveland*'s rationale, any money belonging to Mahle Behr or CPC Parts is not traceable. Therefore, we agree with the trial court that, under *Cleveland*, the companies' claims for restitution sound in law.

{¶ 13} Mahle Behr and CPC Parts argue that their equal-protection claims raise an issue not present in *Cleveland*, though. These alleged constitutional claims seek the same relief as the unjust-enrichment claims, making them legal claims under our earlier analysis. In fact in the general fact pleading of each complaint, each plaintiff states "[t]he Bureau of Workers' Compensation violated the Ohio Constitution by unconstitutionally interpreting the Ohio Administrative Code and the Ohio Revised Code against Plaintiff and employers in the large deductible program." Mahle Behr Amended Complaint ¶ 40, CPC Parts Intervening Complaint ¶ 37. And under the "unjust enrichment" first cause of action portion of each complaint, each alleges "[t]he Bureau of Workers' Compensation unconstitutionally applied Ohio statutes and administrative codes." Mahle Behr Amended Complaint ¶ 48, CPC Parts Intervening Complaint ¶ 45. We address whether the alleged separate allegation of the constitutional nature of their claims raises a separate jurisdictional question.

{¶ 14} The waiver of immunity in R.C. 2743.02 allows suits against the state "in accordance with the same rules of law applicable to suits between private parties." R.C. 2743.02(A)(1). Based on this language, the Tenth District[1] "has consistently held that constitutional and Section 1983, Title 42, U.S.Code claims are not actionable in the Court of Claims." *Bleicher v. Univ. of Cincinnati College of Med.*, 78 Ohio App.3d 302, 306, 604 N.E.2d 783 (10th Dist.1992). In other words, "the Court of Claims lacks subject-matter jurisdiction over alleged violations of constitutional rights." *Hernandez v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 17AP-37, 2017-Ohio-8646, ¶ 8. The court has

---

[1] The Tenth District has had the most opportunity to consider these jurisdictional issues, "[b]y virtue of being the statutory appellate court from the Court of Claims." *Reynolds v. State, Div. of Parole & Community Servs.*, 14 Ohio St.3d 68, 72, 471 N.E.2d 776 (1984).

reasoned that the statutory language limits a plaintiff in the Court of Claims to causes of action that he could pursue if the defendant were a private party and that an alleged violation of constitutional rights requires an element of state action. *Bleicher* at 307.

{¶ 15} The constitutional claims in the cases that apply the Tenth District's principle almost invariably involve suits that assert the constitutional violation as a private right of action and seek relief for the violation. For example, in *Henneke v. Ohio Dept. of Ins.*, 10th Dist. Franklin No. 11AP-254, 2011-Ohio-5366, the plaintiff filed a complaint against the Ohio Department of Insurance (ODI) alleging that the ODI's revocation of her surety bail bond license violated her rights of equal protection and due process under the Ohio and United States Constitutions. The court held that her causes of action for violation of her constitutional rights were not cognizable against a private party. The wrong alleged in that case was the violation of the constitution and the relief sought was for the violation.

{¶ 16} But not every allegation of a constitutional violation is brought as a private cause of action that seeks relief for the violation itself. Indeed, the Tenth District recognized this in *Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.*, 10th Dist. Franklin No. 88AP-1034, 1990 WL 85136 (Jun. 21, 1990), *affirmed*, 62 Ohio St.3d 97, 579 N.E.2d 695 (1991). In that case, the plaintiffs filed suit in the Court of Claims against the Ohio Department of Human Services (ODHS) alleging that an administrative rule violated Ohio and federal statutes and the United States Constitution. They sought injunctive, declaratory, and monetary relief on the grounds that ODHS had violated their rights under agreements between the parties, Ohio and federal law, the Ohio Constitution, and the United States Constitution, including the due process and equal protection clauses in the Fourteenth Amendment. The Court of Claims found (among other things) that the

enactment of the administrative rule violated the plaintiffs' due process and equal protection rights. On appeal, ODHS argued that the plaintiffs could not bring the constitutional claims directly under the Fourteenth Amendment. It contended that the claims should have been dismissed, because the claims could be brought only as a Section 1983 claim, which is not actionable in the Court of Claims. But the appellate court rejected this argument. The court determined that, though a Section 1983 action could not be brought, the plaintiffs were entitled to raise the issues in their constitutional claims directly. The court stated: "ODHS cites no authority, and we are aware of none, which lends credence to ODHS's contention that allegations of constitutional violations by a state's enactment of legislation cannot be brought directly under the Fourteenth Amendment." *Id.* at *9. The court of appeals ultimately held that the plaintiffs' rights to due process and equal protection were not violated by the enactment of the administrative rule. ODHS appealed to the Ohio Supreme Court and challenged the appellate court's determination that the plaintiffs were entitled to raise their constitutional claims directly. But because the Court found that the plaintiffs were entitled to relief under Ohio and federal law, it declined to address the constitutional issue, which it called the plaintiffs' "alternate basis for relief." *Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.*, 62 Ohio St.3d 97, 105, 579 N.E.2d 695 (1991).[2]

{¶ 17} In the present case, we conclude that Mahle Behr and CPC Parts' allegation that the BWC violated their equal-protection rights did not constitute a separate and distinct unactionable constitutional claim. Artful pleading cannot convert their claim into a

---

[2] The Court affirmed the appellate court's judgment, though it vacated as moot "the portion of the court's decision that addresses the constitutionality" of the administrative rule. *Ohio Hosp. Assn.*, 62 Ohio St.3d at 106, 579 N.E.2d 695.

separate independent claim for relief for the alleged constitutional violation. Rather, this action seeks restitution for the BWC's alleged misinterpretation of Ohio law, and the constitutional interpretation of the administrative code is merely an alternate basis for that relief. *See Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, 7 N.E.3d 1188, ¶ 38 ("Regardless of how an action is labeled, the substance of the party's arguments and the type of relief requested determine the nature of the action."); *Cirino*, 153 Ohio St.3d 333, 2018-Ohio-2665, 106 N.E.3d 41, at ¶ 25 (quoting the same). In this case, we hold that the Court of Claims has jurisdiction to address the claims of an equal protection violation, if it finds that the plaintiffs are not entitled to relief on other grounds, *see Ohio Hosp. Assn.*, 62 Ohio St.3d at 105, 579 N.E.2d 695, quoting *Burt Realty Corp. v. Columbus*, 21 Ohio St.2d 265, 269, 493, 257 N.E.2d 355 (1970) (" 'No court should * * * indulge the constitutional issue if the litigant is entitled to relief upon other grounds.' ").

### III. Conclusion

{¶ 18} The sole assignment of error is overruled. The trial court correctly determined that the Court of Claims has exclusive jurisdiction over the plaintiffs' claims. The court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and FROELICH, J., concur.

Copies sent to:

Jennifer L. Myers
Ronald A. Fresco
D. Patrick Kasson
Thomas N. Spyker
James D. Abrams
David J. Butler
Jennifer D. Brumby
John Smart
Hon. Gerald Parker