[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Kent Elastomer Prods., Inc. v. McCloud*, Slip Opinion No. 2026-Ohio-1105.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1105

THE STATE EX REL. KENT ELASTOMER PRODUCTS, INC., APPELLEE, *v.* MCCLOUD,[1] ADMR., BUREAU OF WORKERS' COMPENSATION, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Kent Elastomer Prods., Inc. v. McCloud*, Slip Opinion No. 2026-Ohio-1105.]**

*Workers' compensation—Insurance premiums—Adm.Code 4123-17-73—Group-retrospective-rating program—Employer had clear legal right to have Bureau of Workers' Compensation administer group-retro program under Adm.Code 4123-17-73, and bureau had clear legal duty to do so—Bureau's authority to return excess surplus under R.C. 4123.321 and Adm.Code 4123-17-10 in form of COVID-19 dividend did not allow it to suspend administering group-retro program under Adm.Code 4123-17-73 for 2018 policy year—Bureau waived its right to assert accord and satisfaction by*

---

1. Under S.Ct.Prac.R. 4.06(B), Stephanie McCloud, the current administrator of the Bureau of Workers' Compensation, is automatically substituted for John Logue, the former administrator, as a party to this action.

*failing to raise it as an affirmative defense in its answer to employer's complaint—Court of appeals' judgment issuing limited writ affirmed.*

(No. 2024-1789—Submitted October 7, 2025—Decided April 1, 2026.)

APPEAL from the Court of Appeals for Franklin County,

No. 21AP-387, 2024-Ohio-5451.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Appellee, Kent Elastomer Products, Inc., requested a refund of its 2018 policy-year workers' compensation premium based on its participation in one of the Bureau of Workers' Compensation's employer-incentive programs. The bureau denied Kent Elastomer's request because it had already received a refund of its 2018 premium in the form of a dividend payment, which the bureau had issued to all state-fund employers during the COVID-19 pandemic. Kent Elastomer then filed a complaint in the Tenth District Court of Appeals, seeking a writ of mandamus to compel appellant, the bureau's administrator, to issue Kent Elastomer a refund in accordance with the administrative rule implementing the employer-incentive program in which Kent Elastomer had participated. The Tenth District granted a limited writ, and the bureau has appealed.

{¶ 2} For the reasons that follow, we affirm.

## I. BACKGROUND

### A. The Bureau's Group-Retrospective-Rating Program

{¶ 3} When obtaining workers' compensation coverage, Ohio employers may choose from a range of plans. In 2018, Kent Elastomer, a manufacturer based in Kent, applied for and was accepted into the bureau's group-retrospective-rating program ("group-retro program"), which was a plan designed "to provide financial

incentive to employer groups participating in the program that, through improvements in workplace safety and injured worker outcomes, are able to keep their claim costs below a predefined level," former Adm.Code 4123-17-73(A)(1).[2]

{¶ 4} Under the program, a sponsoring organization creates a group of employers in similar industries with similar risks. Adm.Code 4123-17-73(C). The participating employers continue to pay their individual annual premiums as if they were not included in the group, but they agree to adjust those premiums retrospectively—in the form of a refund or an additional assessment—based on the combined performance of the group. To measure that performance, the bureau calculates the "group retrospective premium," Adm.Code 4123-17-73(Q)(1), at three scheduled evaluation dates: 12 months after the policy year ends, 24 months after the policy year ends, and 36 months after the policy year ends, Adm.Code 4123-17-73(A)(4) and (Q)(1). After each evaluation date, the bureau analyzes all claims with dates of injury during the group's policy year, calculates the incurred losses and reserves (the estimates of future costs) for those claims, and then calculates the group retrospective premium based on that new claim information. Adm.Code 4123-17-73(A)(9) and (Q)(1).

{¶ 5} The bureau then compares the group retrospective premium to the "group standard premium," the combined premiums that each individual group member previously paid for the policy year. *Id.* Depending on the group's performance, the difference between the group retrospective premium and the group standard premium is distributed as a refund to the employers or billed to them as an assessment. *Id.* That is, if the group outperforms the standard premium, the group members will receive a refund; if the group underperforms the standard premium, the members will be charged an additional assessment.

---

2. Unless otherwise noted, all references to Adm.Code 4123-17-73 are to the version in effect during the relevant events in this case: former Adm.Code 4123-17-73, 2018-2019, Ohio Monthly Record 2-4399 (effective July 1, 2019).

**{¶ 6}** Under the terms of Kent Elastomer's 2018 group-retro program, the maximum refund that it could have received after the three evaluation dates was 68 percent of the standard premium that it had paid. And the maximum assessment that it could have been charged was an additional 25 percent of the standard premium. The 2018 policy year commenced on July 1, 2018, and ended on June 30, 2019. Therefore, the first evaluation period was to commence in mid-2020— 12 months after the policy year ended.

### B. The Bureau Issues a COVID-19 Dividend Payment

**{¶ 7}** On April 10, 2020, the governor and the bureau's board of directors proposed a plan to pay a one-time dividend from the state insurance fund to Ohio employers paying into the fund to help "ease the financial pressures these employers [had been] experiencing amid the coronavirus (COVID-19) pandemic." For private employers, the bureau defined the dividend amount as 100 percent of the employer's billed premium for the 2018 policy year. Thus, the bureau decided to return to Ohio's employers every dollar of workers' compensation premium that they had paid for the 2018 policy year. The bureau's written proposal identified several eligibility requirements and other parameters. Of significant note for this case, the proposal stated that for group-retro-program employers, "[f]uture evaluations including the 2018 public and private group retrospective rated policy years w[ould] not result in adjustment of the dividend or any additional credits or debits."

**{¶ 8}** On April 22, 2020, Kent Elastomer was issued a dividend check for $155,069, which equaled the premium amount it had paid for the 2018 policy year.

### C. The Bureau Denies Kent Elastomer's Request for a Refund under the Group-Retro Program

**{¶ 9}** In May 2020, the bureau advised Kent Elastomer's third-party administrator that because the bureau had already issued dividend checks equaling 100 percent of employers' premiums for the 2018 policy year, the bureau would

not be issuing refunds under the group-retro program for that policy year. Kent Elastomer nevertheless requested a refund under the program. After the bureau denied the request, Kent Elastomer asked for a hearing before the bureau's adjudicating committee. *See* R.C. 4123.291(A) and (B)(6) (empowering an "adjudicating committee appointed by the administrator of workers' compensation to hear any matter specified" within the statute, including any decision relating to a "risk premium matter" under R.C. Ch. 4123). Among other things, Kent Elastomer argued that the bureau lacked authority to alter Adm.Code 4123-17-73's requirements relating to when an employer is eligible for a refund under the group-retro program.

{¶ 10} After a hearing, the adjudicating committee denied Kent Elastomer's request for a refund, finding that the bureau had "authority to make practical business decisions in extraordinary situations," that the group-retro program "was for all practical purposes nullified for [the 2018] policy year for an obvious good reason," and that the "purpose of the program no longer exist[ed] for policy year 2018 due to the dividend of 100% billed premium."

{¶ 11} Kent Elastomer appealed the adjudicating committee's decision to the administrator's designee. *See* R.C. 4123.291(B) ("An employer who is adversely affected by a decision of an adjudicating committee . . . may appeal the decision of the committee to the administrator or the administrator's designee."). After another hearing, the administrator's designee upheld the adjudicating committee's decision, finding that the bureau had considered the group-retro program when it crafted the COVID-19 dividend payment and had decided that in light of the dividend, no refunds or future assessments relating to the 2018 policy year would be issued.

### D. The Tenth District Grants Kent Elastomer a Writ of Mandamus

{¶ 12} Kent Elastomer filed a complaint in the Tenth District for a writ of mandamus, alleging that the bureau had abused its discretion by disregarding

Adm.Code 4123-17-73's requirements and refusing to issue refunds under the group-retro program for the 2018 policy year. As a participant in the program, Kent Elastomer argued that it had a clear legal right to any refunds owed in accordance with calculations under the administrative rule and that the bureau had a clear legal duty to follow the procedures set forth in the rule.

{¶ 13} A magistrate recommended that the Tenth District issue a limited writ, finding that the bureau had acted without authority by not administering the group-retro program under Adm.Code 4123-17-73. 2024-Ohio-5451, ¶ 53, 65, 72 (10th Dist.). The bureau filed objections. In a split decision, a panel of the Tenth District overruled the bureau's objections and adopted the magistrate's decision with one exception not relevant to this appeal. The majority found that although the bureau had authority to issue the COVID-19 dividend, it lacked authority to suspend its obligations under Adm.Code 4123-17-73 to issue premium refunds or assessments for the 2018 policy year. *Id.* at ¶ 18-20, 27-32. The Tenth District therefore vacated the orders of the adjudicating committee and the administrator's designee and remanded the matter to the bureau for it to administer the group-retro program in accordance with Adm.Code 4123-17-73. *See id.* at ¶ 36, 73.

{¶ 14} The dissenting judge would have denied the writ. She opined that after 100 percent of the premium paid for the 2018 policy year had been refunded to Kent Elastomer in the form of the dividend, no premium payment remained for the bureau to refund under the group-retro program. *Id*. at ¶ 39-40 (Luper Schuster, J., dissenting).

{¶ 15} The bureau filed this direct appeal.

## II. STANDARD OF REVIEW

{¶ 16} To be entitled to a writ of mandamus, a relator must establish a clear legal right to the relief requested, a clear legal duty on the part of the bureau to provide the relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Ugicom Ents., Inc. v. Morrison*, 2022-Ohio-1689, ¶ 14. In a direct

appeal from the judgment in a mandamus action that originated in the court of appeals, we review the judgment as if the action had been originally filed here. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 164 (1967).

{¶ 17} A writ of mandamus may lie when there is a legal basis to compel the bureau to perform its duties under the law or when the bureau has abused its discretion in carrying out its duties. *State ex rel. Estate of Sziraki v. Admr., Bur. of Workers' Comp.*, 2013-Ohio-4007, ¶ 16. To determine whether the bureau abused its discretion, we examine whether the bureau's order is adequately explained and is supported with some evidence in the record. *State ex rel. Friendship Supported Living, Inc. v. Ohio Bur. of Workers' Comp.*, 2023-Ohio-957, ¶ 11. The bureau is the exclusive finder of fact in workers' compensation matters. *Ugicom* at ¶ 14. However, when an underlying stipulated record presents a question of law, we review de novo a lower court's judgment issuing a writ of mandamus. *See State ex rel. Parikh v. Berkowitz*, 2025-Ohio-2117, ¶ 11.

### III. ANALYSIS

### A. The Bureau Must Follow Its Own Administrative Rules

{¶ 18} R.C. 4123.29(A)(4)(a) directs the bureau's administrator to offer "a plan that groups, for rating purposes, employers, and pools the risk of the employers within the group," provided that the employers meet certain conditions. Under this provision, the bureau has developed group-rated incentive plans in which employers' collective risk is pooled to garner better premiums. *See, e.g.*, *Cleveland v. Ohio Bur. of Workers' Comp.*, 2020-Ohio-337, ¶ 5.

{¶ 19} For the 2018 policy year, Adm.Code 4123-17-73 set forth, in detail, the eligibility requirements for the group-retro program and how the bureau would administer the program. Of significant note for this case, the administrative rule provided that on the three evaluation dates after a policy year ends, "the bureau will evaluate all claims with injury dates that fall within the retro policy year," capture the incurred losses and reserves for those claims, calculate the group retrospective

premium based on the group's developed incurred losses, and compare the group retrospective premium to the group standard premium. Former Adm.Code 4123-17-73(Q)(1), 2018-2019, Ohio Monthly Record 2-4399, 2-4402 (effective July 1, 2019).

{¶ 20} The rule then provided: "The difference *will* be distributed or billed to employers as a refund or assessment." (Emphasis added.) *Id.* In addition, the rule stated that refunds or assessments "*will* be distributed directly to group retro employers," that "[w]ithin four months of the evaluation date, if entitled, the bureau *will* send premium refunds," and that if an additional premium amount is owed, "it *will* be included in the employer's next invoice and must be paid by the due date stated on the invoice." (Emphasis added.) Former Adm.Code 4123-17-73(R)(5), (6), and (7).

{¶ 21} Thus, the administrative rule prescribed exactly when and exactly how premium refunds or additional assessments would be issued. And given the use of the word "will" in the rule, the bureau was obligated to calculate the group retrospective premium for each group of participating employers and, based on those results, issue refunds or assessments to the groups.

{¶ 22} On appeal, the bureau cites no portion of Adm.Code 4123-17-73—or any other statute or rule—that excuses performance of that obligation when the bureau decides to issue a dividend to employers in an amount equal to what each employer paid in premiums for that policy year. Yet as the Tenth District majority noted, the bureau attempted to impose, by approving the COVID-19 dividend, "a temporary moratorium on group retro premium calculations under Ohio Adm.Code 4123-17-73(Q)." 2024-Ohio-5451 at ¶ 28 (10th Dist.). That is, the bureau simply announced that because it was issuing the one-time COVID-19 dividend, it would forgo distributing refunds or charging assessments under the group-retro program for the 2018 policy year.

**{¶ 23}** We have long held that "[a]dministrative regulations issued pursuant to statutory authority have the force and effect of law; consequently, administrative agencies are bound by their own rules until those rules are duly changed." *State ex rel. Cuyahoga Cty. Hosp. v. Ohio Bur. of Workers' Comp.*, 27 Ohio St.3d 25, 28 (1986). In other words, the bureau must follow its "own rules as written," and it "cannot give selective effect to provisions to produce a desired result or otherwise change them without complying with the [appropriate] rule-making procedure." *State ex rel. H.C.F., Inc. v. Ohio Bur. of Workers' Comp.*, 1998-Ohio-175, ¶ 19. Here, Kent Elastomer had a clear legal right to have the bureau administer the group-retro program under Adm.Code 4123-17-73, and the bureau had a clear legal duty to do so. Yet the bureau decided to suspend some of its duties under Adm.Code 4123-17-73 without following the appropriate rulemaking process.[3]

**B. The Bureau's Appellate Arguments Lack Merit**

**{¶ 24}** On appeal, the bureau sets forth three propositions of law. None has merit.

---

3. The bureau has since amended Adm.Code 4123-17-73 to prevent an employer participating in the group-retro program from receiving a premium refund that would exceed the amount that the employer paid for a certain policy year—and thereby prevent the situation that occurred here. *See* Adm.Code 4123-17-73(Q)(1)(b), 2020-2021 Monthly Record 2-2291, 2-2295 (effective May 9, 2021). In the proceedings below, the administrator's designee said that by amending the administrative rule, the bureau merely journalized its long-standing authority to cap a refund. We have recognized that, at least for purposes of statutory amendments, "the purpose of an amendment 'may be either to add new provisions and conditions to the section as it then stands, or for the purpose of making plain the meaning and intent thereof.'" *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 67 (1975), quoting *Lytle v. Baldinger*, 84 Ohio St. 1, 8 (1911). In this case, it appears that the amendment was not a clarification of existing language but, rather, a new provision changing the effect and operation of the rule. Regardless, when Kent Elastomer requested a refund for the 2018 policy year, there was no comparable language under Adm.Code 4123-17-73(Q) limiting an employer's refund to no more than what the employer had paid for the policy year. *See* former Adm.Code 4123-17-73(Q)(1), 2018-2019 Ohio Monthly Record, at 2-4402. And Kent Elastomer is seeking to compel the bureau to carry out its duties in accordance with the rule as written for the 2018 policy year—not in accordance with how the bureau had intended for that version of the rule to be interpreted.

*1. Proposition of Law No. 1: The Bureau's Discretion to Issue Dividends*

**{¶ 25}** As its first proposition of law, the bureau asserts that the General Assembly granted it broad discretion to set premiums and issue dividends and that this court has long deferred to the bureau on premium-related matters. The bureau believes that it reasonably exercised that discretion in this case by incorporating—or, in its words, "front-loading"—any group-retro-program refund that an employer might later have been entitled to receive into the COVID-19 dividend. The bureau also contends that deference to its premium-related decisions is especially appropriate here given the unprecedented circumstances that led it to issue the COVID-19 dividend. The bureau could not have abused its discretion, it maintains, by deciding to quickly distribute cash to Ohio's struggling employers during a global pandemic, which resulted in an employer like Kent Elastomer receiving 100 percent of its 2018 policy-year premiums—a much larger refund than it could have received under the group-retro program—*and* insulating it from being charged future assessments under the program.

**{¶ 26}** The bureau is correct that it had authority to issue the COVID-19 dividend and that we have recognized the bureau's broad discretion in premium-related matters. But the bureau's authority to issue the dividend did not allow it to suspend administering the group-retro program for the 2018 policy year.

**{¶ 27}** In proposing the COVID-19 dividend, the bureau cited R.C. 4123.321 and Adm.Code 4123-17-10 as legal authority for the dividend. That statute and administrative rule authorize the bureau to refund "excess surplus" in the state insurance fund to employers. Specifically, R.C. 4123.321 requires the bureau's board of directors to adopt a rule with respect to the state insurance fund providing that in the event of "a surplus of earned premium over all losses that . . . is larger than is necessary adequately to safeguard the solvency of the fund, the board may return such excess surplus to the subscribers to the fund in either the form of cash refunds or a reduction of premiums, regardless of when the premium

10

obligations have accrued." Under R.C. 4123.321, the bureau adopted former Adm.Code 4123-17-10, which provided as follows when the bureau issued the COVID-19 dividend:

> The bureau of workers' compensation board of directors shall have the discretion and authority to determine whether there is an excess surplus of premium; whether to return the excess surplus to employers; the nature of the cash refunds or reduction of premiums; the employers who are subscribers to the state insurance fund who are eligible for the cash refunds or reduction of premiums; . . . and any other issues involving cash refunds or reduction of premiums due to an excess surplus of earned premium.

Former Adm.Code 4123-17-10, 2018-2019 Ohio Monthly Record 2-1291, 2-1291 through 2-1292 (effective Aug. 1, 2018).

{¶ 28} In this case, no one disputes the bureau's authority to return excess surplus to Ohio employers in the form of the COVID-19 dividend. And under Adm.Code 4123-17-10, the bureau had full discretion to define the dividend amount as each employer's billed premium for the 2018 policy year. But nothing in R.C. 4123.321 or former Adm.Code 4123-17-10 referred to the group-retro program—let alone vested the bureau with the authority to waive or alter elements of that program because the bureau had decided to return excess surplus by issuing a dividend. Thus, the bureau's discretion to determine the amount and nature of an excess-surplus refund under Adm.Code 4123-17-10 did not allow it to modify the group-retro program under Adm.Code 4123-17-73(Q). *See* 2024-Ohio-5451 at ¶ 32 (10th Dist.).

{¶ 29} With respect to the bureau's deference argument, we have "long recognized the challenges involved in establishing premium rates for workers' compensation coverage and have repeatedly confirmed the deference due the agency in these matters," *State ex rel. RMS of Ohio, Inc. v. Ohio Bur. of Workers' Comp.*, 2007-Ohio-1252, ¶ 6 (collecting cases). That deference, however, has been typically extended to bureau decisions relating to setting premium rates or classifying occupations with respect to their degree of hazard for purposes of fixing an employer's premium. *See, e.g., id.* at ¶ 6-8; *State ex rel. Cafaro Mgt. Co. v. Kielmeyer*, 2007-Ohio-968, ¶ 8-10; *State ex rel. Ohio-Kentucky-Indiana Regional Council of Govts. v. Bur. of Workers' Comp.*, 2022-Ohio-3058, ¶ 32-35. This case is not about setting premium rates or classifying occupations. And the bureau has not adequately explained why any deference due the bureau in those matters should be extended so as to permit the bureau to forgo its duties in administering an employer-incentive program.[4]

{¶ 30} Lastly, the bureau cites no statute or rule that permitted it to unilaterally forgo administering Adm.Code 4123-17-73 due to a global pandemic. The bureau's board of directors undoubtedly approved the COVID-19 dividend with good intentions, and Kent Elastomer might receive what some would consider a windfall as a result of our decision requiring the bureau to comply with its administrative rules. But permitting the bureau to disregard the Administrative Code for public-policy reasons would erode the principles that administrative rules have the force and effect of law and that an agency must follow them until they are changed through the appropriate procedures.

---

4. To the extent that the bureau is asking us to defer to its interpretation of the relevant administrative rules, we have repeatedly rejected "the notion that a court must defer to an agency's interpretation" of the law it is tasked with implementing, *In re Application of Alamo Solar I, L.L.C.*, 2023-Ohio-3778, ¶ 12, citing *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, ¶ 3.

{¶ 31} In sum, the bureau's authority to return excess surplus under R.C. 4123.321 and Adm.Code 4123-17-10 did not encompass the authority to suspend—by mere approval of a dividend payment—its obligations to administer the group-retro program as required by Adm.Code 4123-17-73. We therefore reject the bureau's first proposition of law.

### 2. Proposition of Law No. 2: Accord and Satisfaction

{¶ 32} As its second proposition of law, the bureau raises accord and satisfaction, which is a common-law affirmative defense to a claim for damages, typically asserted in contract and tort cases. *See Allen v. R.G. Indus. Supply*, 1993-Ohio-43, ¶ 10, 17 (lead opinion); *AFC Interiors v. DiCello*, 46 Ohio St.3d 1, 3 (1989). Specifically, "[a]n accord is a contract between a debtor and a creditor in which the creditor's claim is settled in exchange for a sum of money other than that which is allegedly due. Satisfaction is the performance of that contract." *Allen* at ¶ 11. If a party can prove accord and satisfaction, that party's debt is discharged by operation of law. *Id.* at ¶ 10.

{¶ 33} The bureau, however, waived its right to assert accord and satisfaction by failing to raise it as an affirmative defense in its answer to Kent Elastomer's complaint. Civ.R. 8(C) designates certain affirmative defenses, including accord and satisfaction, that must be set forth in an answer or other responsive pleading, "and the failure to do so constitutes waiver." *State ex rel. Parker Bey v. Bur. of Sentence Computation*, 2022-Ohio-236, ¶ 17; *see also Toronto City Schools Bd. of Edn. v. Am. Energy Utica, L.L.C.*, 2020-Ohio-586, ¶ 68 (7th Dist.) ("Accord and satisfaction is an affirmative defense that must be raised in the answer . . . [and] is waived if it is not timely raised."). Here, the bureau raised accord and satisfaction for the first time in the merit brief it filed in this court.

{¶ 34} The bureau also waived the accord-and-satisfaction defense by failing to raise it in the bureau's objections to the magistrate's decision. Civ.R. 53(D)(3)(b)(ii) provides that "[a]n objection to a magistrate's decision shall be

specific and state with particularity all grounds for objection." *See State ex rel. Food & Water Watch v. State*, 2018-Ohio-555, ¶ 16 ("because [the appellants] did not raise an argument relating to standing . . . in their objections to the magistrate's decision, the arguments have been waived on appeal"); *State ex rel. DeGroot v. Tilsley*, 2011-Ohio-231, ¶ 9 (party in a direct appeal waived argument by failing to raise it below).

{¶ 35} The appellate process is not the appropriate forum in which to introduce a new affirmative defense that was not properly preserved in the lower court. Therefore, we reject the bureau's second proposition of law.

### 3. Proposition of Law No. 3: The Bureau's Clear Legal Duty

{¶ 36} As its third proposition of law, the bureau contends that it had no clear legal duty under Adm.Code 4123-17-73 to issue a refund that would result in Kent Elastomer's receiving an amount greater than the premium it paid for the 2018 policy year. The bureau asks us to adopt the reasoning of the Tenth District's dissenting judge, who concluded that once the bureau had refunded 100 percent of Kent Elastomer's 2018 premium in the form of the dividend payment, there was no premium payment remaining for the bureau to refund under the group-retro program, even if it had performed the calculations required by Adm.Code 4123-17-73(Q). 2024-Ohio-5451 at ¶ 39 (10th Dist.) (Luper Schuster, J., dissenting). Therefore, the bureau contends, ordering it to issue additional refunds under the program would constitute a vain act.

{¶ 37} In support of this proposition of law, the bureau also suggests that paying Kent Elastomer any amount in addition to the COVID-19 dividend could have significant financial ramifications on the state insurance fund and therefore would be contrary to the bureau's fiduciary duty to safeguard the fund for the benefit of injured workers.

{¶ 38} We reject the bureau's arguments for the following reasons.

{¶ 39} First, the bureau has misstated the legal duty at issue. Kent Elastomer has not argued that it has a clear legal right to receive more than the premium it paid for the 2018 policy year. Rather, Kent Elastomer seeks to compel the bureau to carry out its obligations under Adm.Code 4123-17-73. If compliance with that administrative rule results in Kent Elastomer's receiving an amount in excess of the premium it paid for the 2018 policy year, that result is a consequence of *the bureau's decision* to issue the COVID-19 dividend.

{¶ 40} Second, the bureau's argument that even if it had attempted to administer the group-retro program "there would be no premium left to refund" ignores the plain language of Adm.Code 4123-17-73(A), which would have prohibited the bureau from considering the COVID-19 dividend in determining whether Kent Elastomer was owed a refund under the group-retro program. As noted above, to determine whether an employer group will receive a refund under the group-retro program, the bureau calculates the group retrospective premium and then compares it to the group standard premium, which is the combined standard premiums of the group members for that policy year. Adm.Code 4123-17-73(Q)(1). The rule's definition of "standard premium" expressly states that when determining an employer's standard premium, the "total premium paid will not be reduced by any rebates *or dividends issued pursuant to [Adm.Code] 4123-17-10.*" (Emphasis added.) Former Adm.Code 4123-17-73(A)(11), 2018-2019 Monthly Record, at 2-4399.

{¶ 41} Because the bureau issued the COVID-19 dividend under Adm.Code 4123-17-10, it would have lacked the authority to reduce Kent Elastomer's standard premium by the amount Kent Elastomer received through the COVID-19 dividend. Contrary to the bureau's contention, there is premium left to refund and therefore, compelling the bureau to comply with its obligations under Adm.Code 4123-17-73 does not constitute a vain act and is not otherwise futile. *See State ex rel. Peoples v. O'Shaughnessy*, 2021-Ohio-1572, ¶ 11 ("An act is in vain when the underlying

dispute has become moot, such that relief in the pending lawsuit would not affect the outcome.").  Simply put, the bureau would have been prevented from considering prior dividends issued under Adm.Code 4123-17-10 when calculating whether any refund was owed under Adm.Code 4123-17-73.

{¶ 42} Third, as the Tenth District majority observed, the bureau's argument that "there would be no premium left to refund" muddies the distinction between a return of *excess surplus* under Adm.Code 4123-17-10 and a refund under the Adm.Code 4123-17-73's group-retro program.  *See* 2024-Ohio-5451 at ¶ 32 (10th Dist.).  The bureau funded the COVID-19 dividend with excess surplus of earned premium in the state insurance fund.  The bureau's proposal announcing the COVID-19 dividend expressly stated that the dividend was "possible due to [the bureau's] investment returns, [its] prudent fiscal management, and the good work of employers who pay their BWC premiums and look out for the health and safety of their employees."  In contrast, group-retro-program employers receive a refund under Adm.Code 4123-17-73 based on their group's performances—without regard to whether there is an excess surplus of premiums in the state insurance fund. These are distinct Administrative Code provisions relating to distinct programs.

{¶ 43} Fourth, although the bureau is obligated to safeguard and maintain the solvency of the state insurance fund, *see* R.C. 4123.34, the bureau has not explained how complying with one of its own administrative rules could constitute misappropriating money in the fund.  Because the bureau is essentially arguing that its duty to safeguard the state insurance fund trumps its responsibilities under the group-retro program, the bureau should have done more than vaguely suggest that ordering it to pay a group-retro-program employer a refund for the 2018 policy year would result in "significant" financial ramifications to the state insurance fund.  By not developing this argument on appeal and supporting it with record evidence or appropriate legal authorities, the bureau has failed to carry its burden as the appellant.

## IV. CONCLUSION

{¶ 44} In its reply brief, the bureau states that "[t]his case is a prime example of the sentiment, 'No good deed goes unpunished.' " Some may find that sentiment true. But for the reasons explained above, we affirm the Tenth District Court of Appeals' judgment. The Tenth District correctly issued a limited writ of mandamus returning this matter to the bureau for it to administer the group-retro program as required by former Adm.Code 4123-17-73(Q) and to distribute a refund or charge an assessment consistent with the requirements in that rule.

Judgment affirmed.

_____

Roetzel & Andress, L.P.A., and Douglas E. Spiker, for appellee.

Dave Yost, Attorney General, and John R. Smart, Assistant Attorney General; and Kegler, Brown, Hill & Ritter, L.P.A., Jacob Dobres, David M. McCarty, and Stephen E. Tugend, for appellant.

_____