OPINION
{¶ 1} Appellant, Ryan Shockley, appeals from a judgment of the Franklin County Court of Common Pleas that affirmed a decision of the Ohio Department of Job and Family Services ("ODJFS") to transfer appellant from the Ohio Home Care Waiver program ("OHCW") to the Transitions Waiver program ("TW"). For the following reasons, we affirm that judgment.
 {¶ 2} Appellant was born on August 21, 1997. Three months later, he suffered a sudden infant crib death-like event for unknown reasons. This incident left appellant with significant medical problems including anoxic encephalopathy, cerebral palsy, gastroesophageal reflux, dysphagia, strabismus, scoliosis and muscular spasticity. He also has mental retardation and developmental delays. He is fed and medicated through a gastrostomy tube and requires a number of daily medicines to control his medical issues. He is at severe risk for aspiration and requires nursing or parental intervention to prevent this. Appellant, now almost eight, requires assistance in his activities of daily living, including bathing, dressing, toileting, mobility, grooming and eating.
 {¶ 3} Before this proceeding, appellant received home and community based services ("HCBS") through the OHCW. The OHCW is part of the Ohio home care program, which provides home care services to Medicaid eligible consumers. Appellant receives services including nursing, occupational and physical therapy, as well as music and speech therapy. After an annual review, ODJFS determined that appellant was no longer eligible for participation in the OHCW and instead should be enrolled in the TW. The TW is also part of the Ohio home care program and also provides services to eligible individuals. It is unclear whether there is or will be a difference in the services provided by the two waiver programs.[1] By a notice mailed to appellant's parents, the Bureau of Home and Community Services proposed to transfer appellant to the TW. Appellant's parents objected to the proposed transfer and requested a state hearing. After that hearing, a state hearing officer recommended that appellant's transfer be affirmed. Appellant appealed that determination to ODJFS. In a decision dated September 5, 2003, ODJFS affirmed the hearing officer's decision to transfer appellant to the TW. Appellant appealed that decision to the Franklin County Court of Common Pleas, which also affirmed appellant's transfer.
 {¶ 4} Appellant appeals to this court, assigning the following error:
THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE ADMINISTRATIVE APPEAL DECISION SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH THE LAW.
 {¶ 5} In an administrative appeal pursuant to R.C. 119.12, the trial court reviews an order to determine whether it is supported by reliable, probative and substantial evidence and is in accordance with law. Huffmanv. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87. Reliable, probative and substantial evidence has been defined as follows:
(1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. "Substantial" evidence is evidence with some weight; it must have importance and value.
Our Place, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570, at 571.
 {¶ 6} On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. Rossford Exempted Village SchoolDist. Bd. of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707. In reviewing the court of common pleas' determination that the administrative agency's order was supported by reliable, probative and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion. Roy v. Ohio State Med.Bd. (1992), 80 Ohio App.3d 675, 680. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219. On questions of law, however, this court's review is plenary. Univ. Hosp., Univ. of CincinnatiCollege of Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339,343.
 {¶ 7} To fully address this appeal, we must first review the procedure ODJFS uses to determine eligibility for home care services. Under the current Ohio home care program, Medicaid eligible consumers[2] may receive services at home as an alternative to a nursing home or hospital. Ohio Adm. Code 5101:3-12-02. As is relevant to this case, a consumer can receive such services if he is enrolled in one of the ODJFS-administered home care benefit packages. Ohio Adm. Code 5101:3-12-04. One of those packages is the ODJFS-administered waiver benefit package, a benefit package for consumers enrolled in an ODJFS-administered HCBS waiver program that consists of nursing services, daily living services, skilled therapies and other approved services. Ohio Adm. Code5101:3-12-01(GG). There are two ODJFS-administered HCBS waiver programs: the OHCW and the TW. Ohio Adm. Code 5101:3-12-01(HH). Therefore, if a consumer is enrolled in either the OHCW or the TW, that consumer is eligible to receive home care services. A consumer may receive home care services from only one waiver program at a time. Ohio Adm. Code5101:3-12-02(B). Appellant was enrolled in the OHCW.
 {¶ 8} The eligibility requirements for a consumer to qualify for either of the ODJFS-administered HCBS waiver programs are set forth in Ohio Adm. Code 5101:3-12-04(C). To enroll in the OHCW, the consumer, regardless of age, must have a skilled level of care ("SLOC"), a chronic, unstable medical condition that requires the skills of a registered nurse, and in the absence of the waiver program, would require long term hospitalization or nursing facility placement. Ohio Adm. Code5101:3-12-04(C)(1)(a).[3] On the other hand, to be eligible for the TW, the consumer must already be enrolled in the OHCW,[4] require services at the level of intermediate care facility services for the mentally retarded ("ICF-MR"), and need habilitation services. Ohio Adm. Code 5101:3-12-04(C)(2). If a consumer needs services at the ICF-MR level of care, he is still eligible for the OHCW if he also meets the SLOC. However, if he meets the ICF-MR level of care but not the SLOC, he is only eligible for the TW.
 {¶ 9} As is clear, a consumer's level of care largely determines his eligibility for enrollment in either of the waiver programs. Appellant does not contest ODJFS' determination that he meets the ICF-MR level of care. Instead, he claims that he also meets the SLOC and should remain in the OHCW. ODJFS contends that appellant does not meet the SLOC and was properly transferred to the TW. Therefore, the initial issue presented in this appeal is whether the trial court abused its discretion when it found reliable, probative and substantial evidence that appellant did not meet the SLOC. It did not.
 {¶ 10} The criteria used to determine whether an individual needs services at the SLOC is set forth in Ohio Adm. Code 5101:3-3-05. As is relevant to this case, appellant would meet the SLOC if he receives at least one skilled nursing service at least seven days per week. Ohio Adm. Code 5101:3-3-05(B)(3). A skilled nursing service is a specific task which must, in accordance with R.C. Chapter 4723, be delivered by a licensed practical nurse ("LPN") under the supervision of a registered nurse ("RN"), or by an RN. Ohio Adm. Code 5101:3-3-05(B)(4). For the delivery of skilled services to qualify for the SLOC, the services must be ordered by a physician, and must be delivered by the licensed or certified professional due to either the instability of the individual's condition and the complexity of the prescribed service, or the instability of the individual's condition and the presence of special medical complications. Ohio Adm. Code 5101:3-3-05(B)(3). The "instability of the individual's condition" means that an individual's condition changes frequently and/or rapidly, so that constant monitoring and/or the frequent adjustment of treatment regimens is required. An individual is considered to have an unstable medical condition if one of the following conditions is met:
(a) The physician has ordered that the nurse or therapist monitor and evaluate the individual's condition on an ongoing basis and make any necessary adjustments to the treatment regimen, and the nursing or therapist's progress notes indicate that such interventions or adjustments have been both necessary and made; or
(b) The physician's orders dealing with the individual's unstable condition reflect that changes and/or adjustments have been made at least monthly.
Ohio Adm. Code 5101:3-3-05(B)(2).
 {¶ 11} We reject appellant's position that Ohio Adm. Code 5101:3-3-05
only sets forth the general criteria for the SLOC and that Ohio Adm. Code5101:3-12-04(C)(1)(a) offers an alternative definition for the SLOC for purposes of the OHCW. Ohio Adm. Code 5101:3-12-04(C)(1)(a) sets forth the criteria for a consumer to be eligible for enrollment in the OHCW. That regulation requires that the consumer, regardless of his age, have a SLOC and, among other things, have a chronic unstable condition. The regulation does not provide an alternate definition of the SLOC. Rather, the plain language of the regulation sets forth the criteria a consumer must meet for enrollment in the OHCW, including that he meet the SLOC definition found in Ohio Adm. Code 5101:3-3-05. Therefore, if appellant does not meet the definition of the SLOC under Ohio Adm. Code 5101:3-3-05, he cannot qualify for enrollment in the OHCW. See Ohio Adm. Code5101:3-12-04(C)(1)(a).
 {¶ 12} The trial court first found that appellant did not receive skilled nursing services seven days a week as required by the SLOC definition. We agree. Appellant receives skilled nursing services Monday through Friday for seven hours a day. However, skilled nursing services are not provided every weekend day. Appellant can receive up to four weekend shifts each month. Four weekend shifts a month leaves at least four other days a month where he does not receive skilled nursing services. That his parents perform those skilled services do not count towards the number of skilled nursing services appellant receives. Skilled nursing services are specifically defined as tasks which must be delivered by an LPN or an RN. Appellant's parents are neither. The trial court did not abuse its discretion when it found that appellant did not receive skilled nursing services seven days a week.
 {¶ 13} Further, the trial court also found reliable, probative and substantial evidence to support ODJFS' determination that appellant's condition was not unstable as defined by the Ohio Administrative Code. Appellant's mother explained that her child was unstable because she needs to communicate with doctors and nurses on a daily basis to keep his medications and feeding schedule in balance and because he has frequent aspiration attacks. Letters from appellant's physicians describe a number of medical problems which causes appellant's condition to be complex. However, there is reliable, probative and substantial evidence to support ODJFS' determination that appellant's medical condition is not unstable as defined in the Ohio Administrative Code. Appellant has not been taken to the emergency department since August 2002 and does not frequently need to be taken to the hospital. His nurses consider his condition stable enough to allow his parents to treat him and deliver feedings and medications without concern. Finally, appellant did not provide physician orders or nurse progress notes to demonstrate that his condition required frequent changes and/or adjustments. The trial court did not abuse its discretion by affirming ODJFS' determination that appellant's condition was not unstable as defined by Ohio Adm. Code 5101:3-3-05(B)(2).
 {¶ 14} In conclusion, the trial court did not abuse its discretion when it found that reliable, probative and substantial evidence supported ODJFS' determination that appellant did not meet the SLOC.
 {¶ 15} Next, appellant contends that Ohio Adm. Code 5101:3-12-15(D) does not mandate the transfer of a consumer who has been found to meet the ICF-MR level of care to the TW. The language of that regulation provides, in pertinent part:
Enrollment on the transitions waiver can only occur by transfer from the Ohio home care waiver, and is not available to new applicants, including individuals on any waiver waiting list. Transfer will occur
after ODJFS or its designee determines a consumer enrolled on the Ohio home care waiver to have an ICF-MR level of care * * *.
(Emphasis added.)
 {¶ 16} As noted, appellant does not question his status at the ICF-MR level of care. However, appellant contends that the above emphasized language mandates only the timing of any transfer and does not make a transfer mandatory. We disagree. In analyzing a statute or regulation, the paramount goal is to ascertain and give effect to the legislature's intent. Christe v. GMS Mgt. Co., Inc. (2000), 88 Ohio St.3d 376, 377;Brooks v. Ohio State Univ. (1996), 111 Ohio App.3d 342, 349. A court best gleans the legislature's intent from the words the General Assembly used and the purpose it sought to accomplish. State v. Hanning (2000),89 Ohio St.3d 86, 91. Where the meaning of the regulation is clear and definite, it must be applied as written and need not be interpreted.State ex rel. Purdy v. Clermont Cty. Bd. of Elections (1997),77 Ohio St.3d 338, 340; Bailey v. Republic Engineered Steels, Inc.
(2001), 91 Ohio St.3d 38, 40.
 {¶ 17} The language in Ohio Adm. Code 5101:3-12-15(D) is not ambiguous and does not need to be interpreted. Appellant does not even contend that the language is ambiguous. The plain language of the regulation does have a timing aspect to it, as it prohibits a transfer from occurring until a consumer is determined to have an ICF-MR level of care. However, the language also makes that transfer mandatory once such a finding is made. Appellant contends that the use of the word "will" instead of the word "shall" makes the transfer optional. We disagree. Appellant presents no case law interpreting the word "will" as permissive and not mandatory. Moreover, the state hearing officer found that appellant's transfer was mandatory upon its finding that appellant met the ICF-MR level of care. A reviewing court will generally defer to an administrative agency's interpretation of its own rules. Cincinnati City School Dist. v. StateBd. of Edn. (1996), 113 Ohio App.3d 305, 312. ODJFS' interpretation of its own regulation is a reasonable interpretation. The use of the word "will" in this regulation makes a transfer mandatory once a consumer already enrolled on the OHCW is determined to have an ICF-MR level of care. Therefore, we reject appellant's interpretation of Ohio Adm. Code5101:3-12-15(D).
 {¶ 18} Appellant next contends that his transfer to the TW violates the Equal Protection Clause of the Ohio and United States Constitutions.[5] Appellant claims that ODJFS is treating individuals with complicated medical conditions as well as mental retardation issues differently. He claims that those who are already on the OHCW are being transferred to the TW, while those who were not already on the OHCW, are denied enrollment in either waiver program. This situation exists because the TW is open only for consumers already enrolled in the OHCW. Ohio Adm. Code 5101:3-12-15(D).
 {¶ 19} The guarantee of equal protection of the laws means that "`all litigants similarly situated may appeal to courts for both relief and defense under like conditions, with like protection, and without discrimination.'" Conley v. Shearer (1992), 64 Ohio St.3d 284, 288, quoting Sexton v. Barry (C.A.6, 1956), 233 F.2d 220, 224. Thus, "`[s]o long as the laws are applicable to all persons under like circumstances and * * * operate alike upon all persons similarly situated, it suffices the constitutional prohibition against the denial of equal protection of the laws.'" Id., quoting Dayton v. Keys (1969), 21 Ohio Misc. 105.
 {¶ 20} The people appellant claims are being discriminated against are not similarly situated. While they all have complicated medical conditions as well as mental retardation issues, some are already on the OHCW and others are not. Therefore, these people are not in the same situation. The Equal Protection Clause does not require that individuals who are differently situated to be treated equally. Linger v. Andrews,
Franklin App. No. 02AP-39, 2002-Ohio-4495, at ¶ 23; see, also, LindenMedical Pharmacy v. Ohio State Bd. of Pharmacy, Franklin App. No. 02AP-1233, 2003-Ohio-6650, at ¶ 17 (rejecting equal protection argument where, among other things, appellant failed to provide information to demonstrate treatment of others similarly situated).
 {¶ 21} Assuming similarly situated individuals, for a state regulation to pass constitutional scrutiny under the Equal Protection Clause, absent a suspect class or fundamental right, the regulation must pass the rational basis test. Toledo v. Wacenske (1994), 95 Ohio App.3d 282,287; Opus III-VII Corp. v. Ohio State Bd. of Pharmacy (1996),109 Ohio App.3d 102, 115. Appellant has not identified a fundamental right involved in this case, and the individuals involved are not part of a suspect class. City of Cleburne, Tex. v. Cleburne Living Ctr. (1985),473 U.S. 432, 446, 105 S.Ct. 3249, 3258. Thus, when appellant challenges his transfer as being discriminatory, the regulation is presumed constitutional and the classification challenged must only be rationally related to a legitimate state interest. Id. A statute must be upheld on equal protection grounds if there exists any conceivable set of facts under which the classification rationally furthers a legitimate legislative objective. Denicola v. Providence Hospital (1979),57 Ohio St.2d 115; Clements v. Fashing (1982), 457 U.S. 957, 102 S.Ct. 2836.
 {¶ 22} ODJFS contends that the transfer of certain consumers to the TW was being done as part of an ongoing redesign of Ohio's mental retardation and developmentally disabled system as well as to continue receiving federal funding for Medicaid waiver services. Appellant does not argue that the regulations fail the rational basis review, and we cannot say that the actions involved in this case do not further ODJFS' legitimate legislative objectives. Therefore, appellant's transfer and the regulations governing his transfer do not violate the Equal Protection Clause.
 {¶ 23} Next, appellant contends that public policy should prohibit this transfer because no one knows what services he will ultimately receive in the TW. The trial court rejected this argument because testimony indicated that there would be no change in the services appellant receives. We agree. Kim Reedy from ODJFS and Carol Price, a representative from an ODJFS home services facilitation agency, both testified that there will be no change in services provided under the TW. The evidence demonstrates that the services appellant will receive is the same in either program. Even if his services were changed, appellant would be entitled to notice and an opportunity of hearing when such change occurs. See Ohio Adm. Code 5101:3-12-02(F). Therefore, the trial court did not err by rejecting this public policy argument.
 {¶ 24} Finally, appellant contends that ODJFS treated a management review performed by the Centers for Medicare and Medicaid Services ("CMS") as a substantive federal regulation when the review was never properly promulgated at the federal or state level. We disagree. During 2000 and 2001, CMS reviewed how Ohio implemented its home and community based service waiver programs. The review noted a number of deficiencies in Ohio's waiver programs and set forth a number of recommendations for ODJFS to implement to strengthen the administration and oversight of the waiver programs as well as the services received by waiver consumers. Its main recommendation relevant to this appeal was for Ohio to separate consumers with mental retardation issues into a separate waiver program. Ohio accomplished this goal with the creation of the TW. Appellant's transfer, however, did not occur pursuant to the CMS review. ODJFS considered the review's recommendations and took appropriate actions in response, including enacting regulations creating the TW and amending regulations regarding the OHCW and the ICF-MR level of care. Appellant's transfer occurred in accordance with these valid, properly promulgated rules and regulations concerning the ICF-MR level of care, the SLOC and the TW. See, e.g., Ohio Adm. Code 5101:3-12-04 and 5101:3-12-15. Appellant does not contend that these rules and regulations were not validly promulgated. Accordingly, we reject appellant's argument.
 {¶ 25} Having rejected each of appellant's arguments, appellant's assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Sadler and Christley, JJ., concur.
Christley, J., retired of the Eleventh Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] We acknowledge here the Twelfth District's recent opinion in Rosev. Ohio Dept. of Job Family Services, 160 Ohio App.3d 581,2005-Ohio-1804. In that opinion, the court of appeals dismissed an appeal from ODJFS' decision to transfer a consumer from the OHCW to the TW because the consumer did not allege that he had been or would be injured by the transfer. The consumer in Rose acknowledged that he would receive the same benefits and services under either program. We will not address this issue here, as the parties did not raise this issue in their briefs.
[2] Appellant is a consumer, the person receiving Ohio home care services. Ohio Adm. Code 5101:3-12-01(G).
[3] A consumer who is under 60 years of age may also qualify if he has an intermediate level of care. Ohio Adm. Code 5101:3-12-04(C)(1)(b). However, given appellant's mental retardation, he can not qualify for an intermediate level of care. Ohio Adm. Code 5101:3-3-06(C)(1)(c).
[4] Enrollment in the TW is limited to consumers already enrolled in the OHCW and is not open to new applicants. Ohio Adm. Code 5101:3-12-15(D). Appellant was enrolled in the OHCW.
[5] Appellant's brief includes a sentence alleging that his transfer also violates the Due Process Clause of the Ohio and United States Constitutions. However, he does not present any argument why this is true. Because appellant fails to argue this point, we will not address it. See Dickenson v. Hartwig, Lucas App. No. L-03-1085, 2004-Ohio-1330, at ¶ 21.