[Cite as *CPC Parts Delivery, L.L.C. v. Ohio Bur. of Worker's Comp.*, 2024-Ohio-18.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

CPC Parts Delivery, LLC,          :

     Plaintiff-Appellant,       :

v.                            :           No. 22AP-671
                                 (Ct. of Cl. No. 2022-00515JD)

Ohio Bureau of Workers' Compensation,  :

     Defendant-Appellee.     :       (REGULAR CALENDAR)


                            :

Mahle Behr Dayton, LLC et al.,     :

     Plaintiffs-Appellants,    :         No. 22AP-672
                                 (Ct. of Cl. No. 2021-00706JD)

v.                            :

Ohio Bureau of Workers' Compensation,  :     (REGULAR CALENDAR)

     Defendant-Appellee.     :


Mahle Behr Dayton, LLC et al.,     :

     Plaintiffs-Appellants,    :

v.                            :          No. 22AP-696
                                 (Ct. of Cl. No. 2021-00706JD)

Ohio Bureau of Workers' Compensation,  :     (REGULAR CALENDAR)

     Defendant-Appellee.     :

---

D E C I S I O N

Rendered on January 4, 2024

---

**On brief:** *Poling Law, Jennifer L. Myers, Zachary R. Hoover*, and *Matthew D. Stewart*, for appellants CPC Parts Deliver, LLC; *Reminger Co., L.P.A., Ronald Fresco*, and

*Thomas N. Spyker*, for appellants Mahle Behr Dayton, LLC.
**Argued:** *Thomas N. Spyker*.

**On brief:** *Taft Stettinius & Hollister LLP*, *James D. Abrams*,
and *Lauren A. Kemp*, for appellee Ohio Bureau of Workers'
Compensation. **Argued:** *Lauren A. Kemp*.

APPEALS from the Court of Claims of Ohio

BEATTY BLUNT, J.

{¶ 1}  Plaintiffs-appellants, CPC Parts Delivery, LLC ("CPC") and Mahle Behr Dayton, LLC ("Mahle") (collectively, "appellants") appeal from a decision of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, Bureau of Workers' Compensation ("BWC").  For the reasons that follow, we affirm in part and reverse in part the judgments of the trial court.

## I.  Facts and Procedural History

{¶ 2}  These consolidated appeals arise from two cases filed in the Court of Claims by appellants against BWC.  The first case (No. 2021-00706JD) involves both CPC and Mahle, wherein appellants challenged the methodology utilized by BWC to calculate the amounts of premium rebates issued to certain employers participating in the Ohio Bureau of Workers' Compensation Fund (the "State Fund") established to compensate workers injured on the job for the policy years ending June 30, 2012, 2013, and 2016.  That case was originally filed in the Montgomery County Court of Common Pleas but was ultimately dismissed for lack of subject-matter jurisdiction.  On appeal, the Second District Court of Appeals affirmed the judgment of the trial court.  *Mahle Behr Dayton, LLC v. Ohio Bur. of Workers' Comp.*, 2d Dist. No. 28772, 2021-Ohio-145 ("*Mahle I*").  Therein, the appellate court held that appellants' suit against BWC was within the exclusive jurisdiction of the Ohio Court of Claims and not within the subject-matter jurisdiction of the common pleas court.  *Id.*

{¶ 3}  The second case (No. 2022-00515JD) was filed by CPC only.  In that case, CPC alleges it is entitled to a larger dividend than it received for the policy year ending June 20, 2020.  Both the first and second cases involve essentially the same facts and causes of action and were eventually consolidated in the Court of Claims.  (*See* Oct. 14, 2022 Jgmt.

Entry.) In both cases, appellants claim BWC was unjustly enriched and violated equal protection by allegedly calculating rebates due to employers participating in the large deductible program differently from rebates due to employers participating in the individually retrospectively rated program.[1]

{¶ 4} Before discussing the specific facts and evidence submitted in this case, we begin with a brief overview of the aspects of the Ohio workers' compensation system that are applicable in this case. In *Cleveland v. Ohio Bur. Of Workers' Comp.*, 159 Ohio St.3d 459, 2020-Ohio-337, the Supreme Court of Ohio explained:

> Ohio requires public employers that are not self-insured employers to contribute to the public insurance fund "the amount of money determined by the administrator of workers' compensation." R.C. 4123.38. Employers can choose from a range of plans. The BWC offers both individual-and group-rated plans.

> Pursuant to R.C. 4123.29(A), the administrator of the BWC, with the approval of the board of directors, classifies occupations or industries with respect to degree of hazard and risks and sets the premiums that employers must pay into the state insurance fund for workers' compensation coverage each year. The BWC deposits these premiums into a single state insurance fund (it does not maintain a separate account for each employer), and it pays compensation benefits associated with work-related accidents from that fund. With the exception of a required surplus to maintain solvency, R.C. 4123.321 requires the BWC to establish a procedure for returning excess premiums to participating employers in order to maintain a revenue-neutral fund.

*Id*. at ¶ 3-4. The procedures for issuing rebates are set forth in the Ohio Administrative Code.

{¶ 5} The State Fund is intended to be revenue neutral—i.e., the BWC charges Ohio employers only those premium amounts that the BWC actuarially determines are necessary to pay for projected claims costs and other related expenses. (May 2, 2022 Michael Sendelbach Aff. at ¶ 3.) Nevertheless, because of the timing of premium payments and claims made, revenue neutrality does not equate to cash flow neutrality. *Id*. Any excess

---

[1] These programs are discussed more at length below.

cash flowing in is invested for the benefit of the State Fund. *Id.* Thus, a surplus may be generated in excess of what is required to maintain the solvency of the State Fund. *Id.* When such an excess surplus exists, BWC's Board of Directors (the "BWC Board") is authorized to issue rebates to participating Ohio private employers. (*Id.* at ¶ 5; R.C. 4123.321.)

{¶ 6}   In recent history, the BWC Board has approved and issued three separate rebates, each individually totaling approximately $1 billion. (Sendelbach Aff. at ¶ 7.) The most recent such rebate, and the one at issue in this appeal, was issued for the policy year beginning July 1, 2015 and ending June 30, 2016 (the "2015 Policy Year"). *Id.* The BWC Board determined the total dollar amount of rebates to be distributed based on actuarial recommendations, then calculated the rebate amounts. *Id.* at ¶ 6.

{¶ 7}   The Ohio Administrative Code sets forth several programs in which private employers can participate, depending on eligibility requirements. *See* Ohio Adm.Code 4122-17, et seq. Two such programs are relevant to this case: the Individual Retrospective Rating Program ("Individual Retro Program") under Ohio Adm.Code 4123-17-41 and the Large Deductible Program ("Large Deductible Program") under Ohio Adm.Code 4123-17-72. Both CPC and Mahle participated in the Large Deductible Program during the 2015-2016 policy year. (James Tompkins Aff. at ¶ 2; Terri Case Aff. at ¶ 2.)

{¶ 8}   The Individual Retro Program applies a retrospective premium whereby an employer pays an initial policy premium to BWC, which is recalculated at the end of each policy year based on claims incurred during that policy year. (Sendelbach Aff. at ¶ 13.) In this program, "[t]he employer assumes a portion of the risk in exchange for a reduction in premium. The exact cost of a retrospective premium for any policy year cannot be determined until the end of the policy's term when claims experience can be tallied." *Id.*

{¶ 9}   Under the Large Deductible Program, employers pay a guaranteed premium. (Sendelbach Aff. at ¶ 10.) "A guaranteed premium policy is prospective, calculated prior to the policy taking effect * * * [and] is unaffected by claims experience during the coverage period." *Id.* Claims experience during the coverage year may, however, affect the premium charge in subsequent policy years. *Id.* The Large Deductible Program "offers an up-front premium discount since program participants agree to take on a per claim deductible." *Id.*

The maximum amount of the per claim deductible is $200,000. (Tomkins Aff. at ¶ 3; Case Aff. at ¶ 3.)

{¶ 10} When the BWC Board approved the rebate for the 2015 Policy Year, individual rebates were calculated based on a defined percentage of the actual premiums paid by eligible employers. (Sendelbach Aff. at ¶ 6, 8.) Employers participating in the Large Deductible Program—including appellants—did not receive a rebate for claim payments made up to the deductible amount they agreed to pay under that program "[b]ecause deductibles are not defined as premiums." *Id*. In comparison, under the Individual Retro Program, claim costs are specifically defined as premiums; thus, these claim costs were included in the rebate calculation for employers participating in this program. *Id*. at ¶ 13; Ohio Adm.Code 4123-17-52 and 4123-17-41. Thus, the crux of appellants' claims is that it was both unfair and unlawful for BWC to use different formulas to calculate the individual rebates for employers participating in the two different programs, and that appellants are entitled to larger rebates than those that were issued to them.

{¶ 11} On February 24, 2022, BWC filed its motion for summary judgment in the first case (No. 2021-00706). On October 3, 2022, the trial court issued a decision and concurrent judgment entry in which the trial court granted BWC's motion for summary judgment and rendered judgment in favor of BWC on appellants' unjust enrichment claims. The trial court dismissed appellants' equal protection claims, without prejudice, finding that the Court of Claims lacks subject-matter jurisdiction to hear constitutional challenges. (Oct. 3, 2022 Decision; Oct. 3, 2022 Jgmt. Entry.) As noted previously, on October 14, 2022, the trial court consolidated the two cases and granted summary judgment in favor of BWC in the second case for the same reasons given in the first case. (Oct. 14, 2022 Jgmt. Entry.)

{¶ 12} These timely appeals followed, were thereafter consolidated, and are now before the court.

**II. Assignments of Error**

{¶ 13} Appellants asserts the following assignments of error for our review:

[I.] The Court of Claims erred in holding it did not have subject matter jurisdiction over Plaintiffs' equal protection claims.

[II.] The Court of Claims erred in holding that there was a rational basis for BWC differing treatment of employers.

[III.] The Court of Claims erred in holding that Plaintiffs' allegations do not state a claim for unjust enrichment.

(Sic passim.)

## III. Discussion

### A. Standard of Review

{¶ 14} We review a decision on a motion for summary judgment under a de novo standard. *LRC Realty, Inc. v. B.E.B. Properties*, 160 Ohio St.3d 218, 2020-Ohio-3196, ¶ 11. De novo appellate review means the court of appeals conducts an independent review, without deference to the trial court's decision. *Wiltshire Capital Partners v. Reflections II, Inc.*, 10th Dist. No. 19AP-415, 2020-Ohio-3468, ¶ 12. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 15} Pursuant to Civ.R. 56(C), the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact by pointing to specific evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party cannot satisfy this initial burden by simply making conclusory allegations, but instead must demonstrate, including by use of affidavit or other evidence allowed by Civ.R. 56(C), that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Wiltshire Capital* at ¶ 13. If the moving party fails to satisfy this initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies the initial burden, the

nonmoving party has a burden to respond, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Dresher* at 293; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 16} Finally, "[t]rial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992); *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6.

## B. Appellants' Second Assignment of Error

{¶ 17} For ease of analysis, we address appellants' assignments of error out of order. We begin with the second assignment of error, in which appellants assert the Court of Claims erred in holding that there was a rational basis for BWC's differing treatment of employers based on whether the employers participated in the Large Deductible Program versus the Individual Retro Program. This assignment of error is meritless.

{¶ 18} Contrary to appellants' assertion, the trial court did not hold that there was a rational basis for treating different employers differently for purposes of calculating the amounts of rebate due to each of them. Rather, in a footnote, the trial court mused "[e]ven if the Court had jurisdiction to consider the merits of Plaintiffs' equal protection claims, the Court *believes* that the materials provided to the Court exemplify a rational basis for treating the worker's [sic] compensation programs differently." (Emphasis added.) (Oct. 3, 2022 Decision at 6, fn 2.) The trial court provided no further analysis on this musing, no citations to any evidence, and no citations to case law or other authority. Thus, all the trial court presented is a "belief" on its part mentioned in a footnote. As explained below, this remark is not a holding—at best, it is dictum or an advisory opinion.

{¶ 19} The court's footnoted remark regarding its belief is entirely unnecessary to the trial court's ultimate determination that it did not have subject-matter jurisdiction to consider the merits of the constitutional claim of violation of equal protection. Because the trial court's musing is not necessary or even relevant to whether the trial court had subject-matter jurisdiction over the equal protection claim, it is either dictum or an advisory

opinion, and as such is not a reviewable issue before this court. (Citation omitted.) *Nelnet v. Rauch*, 10th Dist. No. 18AP-555, 2019-Ohio-561, ¶ 10-11 ("an advisory opinion is not subject to appeal [and] a party cannot appeal from dictum"); *Davila v. Simpson*, 5th Dist. No. 2017CA00166, 2018-Ohio-946, ¶ 43-44 (an observation by the trial court in issuing a decision which is not necessary to that court's ultimate decision in the case is dicta, "does not state the holding of the trial court and is not subject to reversal.").

**{¶ 20}** Accordingly, we overrule appellants' second assignment of error.

### C. Appellants' Third Assignment of Error

**{¶ 21}** In their third assignment of error, appellants contend the Court of Claims erred in holding that appellants' allegations do not state a claim for unjust enrichment. We disagree.

**{¶ 22}** We begin by noting that although appellants characterize their third assignment of error as being in the nature of failing to state a claim, the trial court's decision pertaining to the unjust enrichment claim was not premised on failing to state a claim. Rather, the trial court found, as a matter of law, that BWC was entitled to summary judgment on this claim based on the proper standard for considering a motion for summary judgment. In other words, even assuming for the sake of argument that appellants are correct that their allegations "stated a claim" for unjust enrichment, this is not the issue that was before the trial court or now before this court. Instead, this court is tasked with reviewing the record, de novo, and determining whether summary judgment is appropriate on the unjust enrichment claim because BWC demonstrated: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *See* Civ.R. 56(C). Against the foregoing standard for whether summary judgment is appropriate or not, we find that trial court did not err in finding BWC was entitled to summary judgment on appellants' claim for unjust enrichment.

**{¶ 23}** To establish a claim for unjust enrichment a plaintiff must demonstrate: (1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it

would be unjust to do so without payment. *Liberty Mut. Ins. Co. v. Three-C Body Shop, Inc.*, 10th Dist. No. 19AP-775, 2020-Ohio-2694, ¶ 10, citing *Saraf v. Maronda Homes, Inc.*, 10th Dist. No. 02AP-461, 2002-Ohio-6741, ¶ 10, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984). To prevail on an unjust enrichment claim " '[i]t is not sufficient for the plaintiffs to show that [they have] conferred a benefit upon the defendants. [Plaintiffs] must go further and show that under the circumstances [they have] a superior equity so that as against [them] it would be unconscionable for the defendants to retain the benefit.' " *Id.*, quoting *United States Health Practices, Inc., v. Blake*, 10th Dist. No. 00AP-1002, 2001 Ohio App. LEXIS *6 (Mar. 22, 2001), quoting *Katz v. Banning*, 84 Ohio App.3d 543, 552 (10th Dist.1992)

{¶ 24} At its core, appellants are seeking additional rebates via their claim of unjust enrichment. But the admissible evidence shows that all of the rebates deemed as surplus were disbursed to appellants and other employers. (*See*, *e.g.*, Sendelbach Aff. at ¶ 6-8.) As the trial court found, because BWC disbursed all the rebates it had deemed as surplus, it has not retained anything. Furthermore, although appellants alleged and argued below that BWC unjustly retained more than $500,000 of premiums paid by appellants for the policy year ending June 30, 2016 (Dec. 9, 2021 Compl. at ¶ 63), as the trial court aptly found, "even though the money that [BWC] designated for rebates may be partly composed of the premiums paid to [BWC] by [appellants], [BWC] has not retained any of that money." (Oct. 3, 2022 Decision at 7.) Therefore, the evidence does not support an unjust enrichment claim against BWC. *See Pohmer v. JP Morgan Chase Bank, N.A.*, 10th Dist. No. 14AP-429, 2015-Ohio-1229, ¶ 19 ("The doctrine of unjust enrichment 'applies when a benefit is conferred and it would be inequitable to permit the benefitting party to *retain the benefit* without compensating the conferring party.' "). (Emphasis added.) (Internal citations omitted.)

{¶ 25} On appeal, appellants have advanced a new argument in support of the "retention of the benefit" element of their unjust enrichment claim not articulated below: that is, that "the rebate adopted resulted in a simple funding ration (sic) of 1.52" for the State Fund, which is higher than the BWC's stated goal of maintaining a simple funding ratio between 1.25 and 1.45. (Appellants' Brief at 22.) What appellants' seem to be arguing

is that the amount of money deemed surplusage to be distributed as rebates to participating employers should have been larger in the first instance, and thus funds were "retained" by BWC.  But it is well-settled that "[u]nder Ohio law, 'arguments raised for the first time on appeal are improper.' " *Tucker v. Leadership Academy for Math*, 10th Dist. No. 14AP-100, 2014-Ohio-3307, ¶ 20, quoting *Marysville Newspapers, Inc. v. Delaware Gazette Co., Inc.*, 3d Dist. No. 14-06-34, 2007-Ohio-4365, ¶ 23.  "Parties cannot raise any new issues for the first time on appeal, and the failure to raise an issue at the trial level waives it on appeal." *Bell v. Teasley*, 10th Dist. No. 10AP-850, 2011-Ohio-2744, ¶ 15, citing *Gangale v. Bur. of Motor Vehicles*, 10th Dist. No. 01AP-1406, 2002-Ohio-2936, ¶ 13.  Indeed, even a de novo standard of review "does not supersede [the] settled practice of not addressing issues raised for the first time on appeal." *Tucker* at ¶ 20, quoting *Henson v. Cleveland Steel Container Corp.*, 11th Dist. No. 2008-P-0053, 2009-Ohio-180, ¶ 77.  Therefore, we decline to address this new argument raised for the first time on appeal.

{¶ 26}  In short, under the facts and admissible evidence of this case, appellants cannot establish the third element of a claim for unjust enrichment.  Therefore, BWC was entitled to summary judgment on this claim and the trial court did not err by finding same.

{¶ 27} Accordingly, appellants' third assignment of error is overruled.

**D.  Appellants' First Assignment of Error**

{¶ 28}  Finally, we turn to appellants' first assignment of error in which they contend the trial court erred in holding it did not have subject matter jurisdiction over appellants' equal protection claims.  We agree.

{¶ 29}  As recognized by the Second District Court of Appeals in *Mahle I*, this court " 'has consistently held that constitutional and Section 1983, Title 42, U.S. Code claims are not actionable in the Court of Claims.' " *Mahle I* at ¶ 14, quoting *Bleicher v. Univ. of Cincinnati College of Med.*, 78 Ohio App.3d 302, 306 (10th Dist.1992).  Thus, generally speaking, " 'the Court of Claims lacks subject-matter jurisdiction over alleged violations of constitutional rights.' " *Id.*, quoting *Hernandez v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 17AP-37, 2017-Ohio-8646, ¶ 8.

{¶ 30}  In *Mahle I* however, the appellate court also aptly pointed out that "[t]he constitutional claims in the cases that apply the Tenth District's principle almost invariably

involve suits that assert the constitutional violation as a private right of action and seek relief for the violation * * *, [b]ut not every allegation of a constitutional violation is brought as a private cause of action that seeks relief for the violation itself." *Id.* at ¶ 15-16. The Second District went on to discuss our decision in *Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.*, 10th Dist. No. 88AP-1034, 1990 Ohio App. LEXIS 2587 (June 21, 1990), *aff'd*, 62 Ohio St.3d 97 (1991), wherein we recognized this point ourselves. The court in *Mahle I* explained as follows:

> In [*Ohio Hosp. Assn.*], the plaintiffs filed suit in the Court of Claims against the Ohio Department of Human Services (ODHS) alleging that an administrative rule violated Ohio and federal statutes and the United States Constitution. They sought injunctive, declaratory, and monetary relief on the grounds that ODHS had violated their rights under agreements between the parties, Ohio and federal law, the Ohio Constitution, and the United States Constitution, including the due process and equal protection clauses in the Fourteenth Amendment. The Court of Claims found (among other things) that the enactment of the administrative rule violated the plaintiffs' due process and equal protection rights. On appeal, ODHS argued that the plaintiffs could not bring the constitutional claims directly under the Fourteenth Amendment. It contended that the claims should have been dismissed, because the claims could be brought only as a Section 1983 claim, which is not actionable in the Court of Claims. But the appellate court rejected this argument. *The court determined that, though a Section 1983 action could not be brought, the plaintiffs were entitled to raise the issues in their constitutional claims directly.* The court stated: "ODHS cites no authority, and we are aware of none, which lends credence to ODHS's contention that allegations of constitutional violations by a state's enactment of legislation cannot be brought directly under the Fourteenth Amendment." 1990 Ohio App. LEXIS 2587 at *9. The court of appeals ultimately held that the plaintiffs' rights to due process and equal protection were not violated by the enactment of the administrative rule. ODHS appealed to the Ohio Supreme Court and challenged the appellate court's determination that the plaintiffs were entitled to raise their constitutional claims directly. But because the Court found that the plaintiffs were entitled to relief under Ohio and federal law, it declined to

address the constitutional issue, which it called the plaintiffs'
"alternate basis for relief."[2]

(Emphasis added.) *Mahle I* at ¶ 16, citing *Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.*, 62 Ohio St.3d 97, 105 (1991). Thus, as the Second District observed, both our own decision in *Ohio Hosp. Assn.* and the Supreme Court's decision on appeal stand for the proposition that where a constitutional claim is brought in the Court of Claims not as a private cause of action that seeks relief for the violation itself, but rather as an alternative basis for the same relief sought under other claims brought in the same suit over which the Court of Claims has jurisdiction, the Court of Claims retains subject-matter jurisdiction over the ancillary constitutional claim.

{¶ 31} Ultimately, in *Mahle I*, the Second District concluded that appellants' "allegation that the BWC violated their equal-protection rights did not constitute a separate and distinct unactionable constitutional claim," but rather was a claim brought as an alternative to appellants' unjust enrichment claim because appellants sought the same relief via both claims." *Id.* at ¶ 17. Specifically, the appellate court in *Mahle I* found "this action seeks restitution for the BWC's alleged misinterpretation of Ohio law, and the constitutional interpretation of the administrative code is merely an alternate basis for that relief." (Citations omitted.) *Id.* at ¶ 17. The appellate court held "that the Court of Claims has jurisdiction to address the claims of an equal protection violation, if it finds that the plaintiffs are not entitled to relief on other grounds." *Id.*, citing *Ohio Hosp. Assn.*, 62 Ohio St.3d 97, 105, quoting *Burt Realty Corp. v. Columbus*, 21 Ohio St.2d 265, 269 (1970) (" 'No court should * * * indulge the constitutional issue if the litigant is entitled to relief upon other grounds.' "). We agree with the holding and conclusion reached by the Second District Court of Appeals.

{¶ 32} As discussed above, we have already determined that the trial court did not err in granting summary judgment in favor of BWC on appellants' claim for unjust enrichment, and thus appellants are not entitled to relief on those grounds. Therefore, based on the foregoing discussion, although appellants are not entitled to relief under their

---

[2] The Supreme Court affirmed our judgment, though it vacated as moot "the portion of the court's decision that addresses the constitutionality" of the administrative rule. *Ohio Hosp. Assn., v. Ohio Dept. of Human Servs.*, 62 Ohio St.3d 97, 106 (1991).

claim for unjust enrichment, the Court of Claims does have subject-matter jurisdiction over appellants' claim for a violation of equal protection, and the Court of Claims erred in finding it lacked subject matter jurisdiction over this claim.[3]

{¶ 33} Accordingly, appellants' first assignment of error is sustained.

## IV. Disposition

{¶ 34} Having overruled appellants' second and third assignments of error and sustained appellants' first assignment of error, we affirm in part and reverse in part the judgments of the Court of Claims of Ohio and remand the matter for further proceedings consistent with this decision.

*Judgments affirmed in part and reversed in part; cause remanded.*

DORRIAN and JAMISON, JJ., concur.

————————————————

[3] As discussed under appellants' second assignment of error, we are cognizant that the trial court has already espoused its "belief" that the evidence submitted in this case evinced "a rational basis for treating the worker's [sic] compensation programs differently." (Oct. 3, 2022 Decision at 6, fn. 2.) On remand, however, we would expect that the trial court would undertake a more rigorous analysis of the relevant law as applied to the admissible evidence in this case and render its decision on the issue accordingly.