[Cite as *CPC Parts Delivery, L.L.C. v. Ohio Bur. of Workers' Comp.*, 2026-Ohio-1058.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CPC Parts Delivery, LLC, | : | |
| Plaintiff-Appellant, | : | No. 25AP-403 |
| | | (Ct. of Cl. No. 2022-00515JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Bureau of Workers' Compensation, | : | |
| Defendant-Appellee. | : | |
| | | |
| Mahle Behr Dayton, LLC, et al., | : | |
| Plaintiffs-Appellants, | : | Nos. 25AP-406 and 25AP-408 |
| | | (Ct. of Cl. No. 2021-00706JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Bureau of Workers' Compensation, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 26, 2026

**On brief:** *Poling Law*, *Jennifer L. Myers*, and *John B. Bauer*, for appellant, CPC Parts Delivery, LLC.

**On brief:** *Reminger Co.*, *L.P.A.*, *Ronald Fresco*, *Evan M. Schantz*, and *Brianna M. Prislipsky*, for appellant, Mahle Behr Dayton, LLC. **Argued:** *Brianna M. Prislipsky*.

**On brief:** *Taft Stettinius & Hollister LLP*, *James D. Abrams*, and *Lauren A. Kemp*, for appellee. **Argued:** *James D. Abrams*.

APPEALS from the Court of Claims of Ohio

DINGUS, J.

{¶ 1} Plaintiffs-appellants, CPC Parts Delivery, LLC ("CPC") and Mahle Behr Dayton, LLC ("Mahle") (collectively "appellants"), appeal from a decision of the Court of

Claims of Ohio granting the motions for summary judgment of defendant-appellee, Bureau of Workers' Compensation ("BWC"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} This is the second appeal before this court in these consolidated cases. In the prior appeal, this court summarized the procedural history of these matters as follows:

> These consolidated appeals arise from two cases filed in the Court of Claims by appellants against BWC. The first case (No. 2021-00706JD) involves both CPC and Mahle, wherein appellants challenged the methodology utilized by BWC to calculate the amounts of premium rebates issued to certain employers participating in the Ohio Bureau of Workers' Compensation Fund (the "State Fund") established to compensate workers injured on the job for the policy years ending June 30, 2012, 2013, and 2016. That case was originally filed in the Montgomery County Court of Common Pleas but was ultimately dismissed for lack of subject-matter jurisdiction. On appeal, the Second District Court of Appeals affirmed the judgment of the trial court. *Mahle Behr Dayton, LLC v. Ohio Bur. of Workers' Comp.*, [2021-Ohio-145 (2d Dist.)] ("*Mahle I*"). Therein, the appellate court held that appellants' suit against BWC was within the exclusive jurisdiction of the Ohio Court of Claims and not within the subject-matter jurisdiction of the common pleas court. *Id*.

> The second case (No. 2022-00515JD) was filed by CPC only. In that case, CPC alleges it is entitled to a larger dividend than it received for the policy year ending June 20, 2020. Both the first and second cases involve essentially the same facts and causes of action and were eventually consolidated in the Court of Claims. (*See* Oct. 14, 2022 Jgmt. Entry.) In both cases, appellants claim BWC was unjustly enriched and violated equal protection by allegedly calculating rebates due to employers participating in the large deductible program differently from rebates due to employers participating in the individually retrospectively rated program.

> . . .

> On October 3, 2022, the trial court issued a decision and concurrent judgment entry in which the trial court granted BWC's motion for summary judgment and rendered judgment in favor of BWC on appellants' unjust enrichment claims. The trial court dismissed appellants' equal protection claims, without prejudice, finding that the Court of Claims lacks subject-matter jurisdiction to hear constitutional challenges. (Oct. 3, 2022 Decision; Oct. 3, 2022 Jgmt. Entry.) As noted

> previously, on October 14, 2022, the trial court consolidated the two cases and granted summary judgment in favor of BWC in the second case for the same reasons given in the first case. (Oct. 14, 2022 Jgmt. Entry.)

*CPC Parts Delivery, L.L.C. v. Ohio Bur. of Workers' Comp.*, 2024-Ohio-18, ¶ 2-3, 11 (10th Dist.) ("*CPC I*").

{¶ 3}  In *CPC I*, this court concluded that although the Court of Claims did not err in granting summary judgment in favor of BWC on appellants' claims for unjust enrichment, it erred in holding that it did not have subject-matter jurisdiction over appellants' equal protection claims. *Id*. at ¶ 26, 32.  Consequently, this court affirmed in part, and reversed in part, the judgments of the Court of Claims, and remanded the matters to that court for further proceedings as to the equal protection claims.  *Id*. at ¶ 34.

{¶ 4}  On remand, the Court of Claims concluded that BWC did not violate appellants' equal protection rights because appellants and the identified comparators were not similarly situated in all relevant respects to appellants and, even if they were, there was a rational basis for the disparate treatment.  Finding that no genuine issue of material fact existed, and that BWC was entitled to judgment as a matter of law, the Court of Claims awarded summary judgment in favor of BWC as to appellants' equal protection claims.

{¶ 5}  Mahle and CPC each filed timely appeals.

## II.  Assignments of Error

{¶ 6}  In their respective appeals, Mahle and CPC each assigns the same sole assignment of error for our review:

> The Court of Claims erred in granting the BWC's motions for summary judgment.

## III.  Discussion

{¶ 7}  Mahle and CPC both allege the Court of Claims erred in granting BWC's motions for summary judgment.  We are unpersuaded.

{¶ 8}  An appellate court reviews summary judgment under the de novo standard. *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 2021-Ohio-3898, ¶ 9 (10th Dist.).  De novo review means the reviewing court independently analyzes the record while giving no deference to the trial court's decision.  *Johnson v. Am. Italian Golf Assn. of Columbus*, 2018-Ohio-2100, ¶ 13 (10th Dist.).

{¶ 9} Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 1997-Ohio-221.

{¶ 10} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 1996-Ohio-107. However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 1997-Ohio-259. Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at ¶ 17; *Vahila* at ¶ 19; Civ.R. 56(E).

{¶ 11} Appellants claim that, in connection with BWC's rebate distribution, BWC violated appellants' equal protection rights by treating them, as employer participants in the large deductible program, differently and without any rational basis than employers participating in the individual retrospective rating program. The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." The Ohio Constitution contains a "functionally equivalent" Equal Protection Clause. *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 1999-Ohio-248, ¶ 15; Ohio Const., art I, § 2.

{¶ 12} Generally, equal protection requires that similarly situated persons be treated similarly under the law. *State v. Lawson*, 2013-Ohio-2111, ¶ 18 (10th Dist.); *see GTE North, Inc. v. Zaino*, 2002-Ohio-2984, ¶ 22 ("The comparison of only similarly situated entities is integral to an equal protection analysis."). The "aim is to keep governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Tonti v. Tonti*, 2007-Ohio-2658, ¶ 11 (10th Dist.), citing *F.S. Royster Guano Co. v.*

*Commonwealth of Virginia*, 253 U.S. 412, 415 (1920). "But the Equal Protection Clause 'does not require things which are different in fact . . . to be treated in law as though they were the same.' " *GTE North, Inc.* at ¶ 22, quoting *Tigner v. Texas*, 310 U.S. 141, 147 (1940). Conversely, if an asserted distinction between parties is not relevant to the challenged action, a government actor will not be able to defeat an equal protection claim on the grounds that the two groups are not similarly situated. *Sherman v. Ohio Pub. Emps. Retirement Sys.*, 2019-Ohio-278, ¶ 19 (10th Dist.), citing *MCI Telecommunications Corp. v. Limbach*, 1994-Ohio-489.

{¶ 13} Thus, to prove an equal protection violation, the plaintiff first must establish that it was treated differently than another person similarly situated. *Conley v. Shearer*, 1992-Ohio-133, ¶ 16; *State ex rel. Walgate v. Kasich*, 2017-Ohio-5528, ¶ 18 (10th Dist.). If the plaintiff and the party being treated differently are similarly situated, and the matter does not involve a suspect class or a fundamental right, the plaintiff also must establish the government action is not rationally related to a legitimate government purpose. *GTE North, Inc.* at ¶ 22; *Shockley v. Ohio Dept. of Job & Family Servs.*, 2005-Ohio-4674, ¶ 21 (10th Dist.); *Angerbauer v. State Med. Bd. of Ohio*, 2017-Ohio-7420, ¶ 51 (10th Dist.) ("Once a showing of discriminatory treatment is made, the plaintiff next must demonstrate the government action against him lacks a rational basis."). If a plaintiff alleging an equal protection violation fails to identify any similarly situated party that was treated differently, it is unnecessary to analyze the purported rational basis of any action. *Pung v. Kopke*, 2025 U.S. App. LEXIS 2149 (6th Cir. Jan. 28, 2025).

{¶ 14} Therefore, at issue in this appeal is whether appellants, as participants in BWC's large deductible program, are similarly situated in all relevant respects to participants in BWC's individual retroactive rating program. Because appellants' equal protection claims relate to BWC's rebate of premiums, to review these claims, we must set forth an overview of the Ohio workers' compensation system. As quoted in *CPC I*, the Supreme Court of Ohio has explained this system as follows:

> "Ohio requires public employers that are not self-insured employers to contribute to the public insurance fund "the amount of money determined by the administrator of workers' compensation." R.C. 4123.38. Employers can choose from a range of plans. The BWC offers both individual-and group-rated plans.

> Pursuant to R.C. 4123.29(A), the administrator of the BWC, with the approval of the board of directors, classifies occupations or industries with respect to degree of hazard and risks and sets the premiums that employers must pay into the state insurance fund for workers' compensation coverage each year. The BWC deposits these premiums into a single state insurance fund (it does not maintain a separate account for each employer), and it pays compensation benefits associated with work-related accidents from that fund. With the exception of a required surplus to maintain solvency, R.C. 4123.321 requires the BWC to establish a procedure for returning excess premiums to participating employers in order to maintain a revenue-neutral fund."

*CPC I* at ¶ 4, quoting *Cleveland v. Ohio Bur. of Workers' Comp.*, 2020-Ohio-337, ¶ 3-4.

{¶ 15} And, as directly pertinent to this appeal, in *CPC I*, this court detailed the factual and legal framework of appellants' equal protection claims against BWC as follows:

> The State Fund is intended to be revenue neutral—i.e., the BWC charges Ohio employers only those premium amounts that the BWC actuarially determines are necessary to pay for projected claims costs and other related expenses. (May 2, 2022 Michael Sendelbach Aff. at ¶ 3.) Nevertheless, because of the timing of premium payments and claims made, revenue neutrality does not equate to cash flow neutrality. *Id.* Any excess cash flowing in is invested for the benefit of the State Fund. *Id.* Thus, a surplus may be generated in excess of what is required to maintain the solvency of the State Fund. *Id.* When such an excess surplus exists, BWC's Board of Directors (the "BWC Board") is authorized to issue rebates to participating Ohio private employers. (*Id.* at ¶ 5; R.C. 4123.321.)
>
> In recent history, the BWC Board has approved and issued three separate rebates, each individually totaling approximately $1 billion. (Sendelbach Aff. at ¶ 7.) The most recent such rebate, and the one at issue in this appeal, was issued for the policy year beginning July 1, 2015 and ending June 30, 2016 (the "2015 Policy Year"). *Id.* The BWC Board determined the total dollar amount of rebates to be distributed based on actuarial recommendations, then calculated the rebate amounts. *Id.* at ¶ 6.
>
> The Ohio Administrative Code sets forth several programs in which private employers can participate, depending on eligibility requirements. *See* Ohio Adm.Code 4122-17, et seq. Two such programs are relevant to this case: the Individual Retrospective Rating Program ("Individual Retro Program") under Ohio Adm.Code 4123-17-41 and the Large Deductible

Program ("Large Deductible Program") under Ohio Adm.Code 4123-17-72. Both CPC and Mahle participated in the Large Deductible Program during the 2015-2016 policy year. (James Tompkins Aff. at ¶ 2; Terri Case Aff. at ¶ 2.)

The Individual Retro Program applies a retrospective premium whereby an employer pays an initial policy premium to BWC, which is recalculated at the end of each policy year based on claims incurred during that policy year. (Sendelbach Aff. at ¶ 13.) In this program, "[t]he employer assumes a portion of the risk in exchange for a reduction in premium. The exact cost of a retrospective premium for any policy year cannot be determined until the end of the policy's term when claims experience can be tallied." *Id.*

Under the Large Deductible Program, employers pay a guaranteed premium. (Sendelbach Aff. at ¶ 10.) "A guaranteed premium policy is prospective, calculated prior to the policy taking effect . . . [and] is unaffected by claims experience during the coverage period." *Id.* Claims experience during the coverage year may, however, affect the premium charge in subsequent policy years. *Id.* The Large Deductible Program "offers an up-front premium discount since program participants agree to take on a per claim deductible." *Id.* The maximum amount of the per claim deductible is $200,000. (Tom[p]kins Aff. at ¶ 3; Case Aff. at ¶ 3.)

When the BWC Board approved the rebate for the 2015 Policy Year, individual rebates were calculated based on a defined percentage of the actual premiums paid by eligible employers. (Sendelbach Aff. at ¶ 6, 8.) Employers participating in the Large Deductible Program—including appellants—did not receive a rebate for claim payments made up to the deductible amount they agreed to pay under that program "[b]ecause deductibles are not defined as premiums." *Id.* In comparison, under the Individual Retro Program, claim costs are specifically defined as premiums; thus, these claim costs were included in the rebate calculation for employers participating in this program. *Id.* at ¶ 13; Ohio Adm.Code 4123-17-52 and 4123-17-41. Thus, the crux of appellants' claims is that it was both unfair and unlawful for BWC to use different formulas to calculate the individual rebates for employers participating in the two different programs, and that appellants are entitled to larger rebates than those that were issued to them.

*CPC I* at ¶ 5-10.

{¶ 16} We find that, under these facts and circumstances, appellants cannot show that, as employers participating in the large deductible program, they are similarly situated

in all relevant respects to employers participating in the individual retrospective rating program. If certain eligibility requirements are met, an employer can choose to participate in either of these elective BWC programs that shift some workers' compensation claims risk to the employers. Although these BWC programs both offer potential financial savings to employers, the programs shift claims-loss risk in a substantively different manner.

{¶ 17} BWC's individual retrospective rating program offers participating employers a lower initial premium obligation that is recalculated at the end of each policy year. This premium adjustment is "based on the incurred losses [during that policy year] and on the audited payrolls of the employer." Adm.Code 4123-17-46(A). Additionally, in this program, the "[p]remiums are subject to minimum and maximum premium limitations as selected by the employer," and the claim costs ultimately borne by the participant are limited to a ten-year period. Adm.Code 4123-17-46(F); Adm.Code 4123-17-52(A).

{¶ 18} Alternatively, BWC's large deductible program—the program selected by appellants—offers participating employers up-front premium discounts, with a selected per-claim deductible, in exchange for assuming some risk. For this program, the participating "employer shall continue to be liable beyond any deductible program period for billings [for claim costs] covered under a deductible program for injuries that arose during any period for which a deductible is applicable, regardless of when payment was made by the bureau." Adm.Code 4123-17-72(J)(4). Also, a large deductible program participant may request an annual aggregate stop-loss limit option in combination with choosing large deductible levels. Adm.Code 4123-17-72(F).

{¶ 19} Thus, the large deductible and individual retrospective rating programs have different features and means to shift some claims-loss risk to employer participants, including differences in the timing and calculation of the premiums that BWC charges. And, significantly, these differences are relevant to the government action that appellants allege violated their equal protection rights—BWC's rebates that were based on the premiums that employers paid. As such, appellants cannot show that, for the purpose of their equal protection claims, they, as participants in the large deductible program, are similarly situated in all relevant respects to employers participating in the individual retrospective rating program.

{¶ 20} Because appellants, as employers participating in the large deductible program, are not similarly situated in all relevant respects to employers participating in the individual retrospective rating program, their equal protection claims fail. And because appellants' equal protection claims fail on this basis, it is unnecessary to review whether appellants presented evidence that BWC's actions were not rationally related to a legitimate government purpose.

{¶ 21} For these reasons, we overrule CPC's sole assignment of error and Mahle's sole assignment of error.

## IV. Disposition

{¶ 22} Having overruled CPC's sole assignment of error and Mahle's sole assignment of error, we affirm the judgments of the Court of Claims of Ohio.

*Judgments affirmed.*

BOGGS, P.J., and JAMISON, J., concur.

————————————